RECORD IMPOUNDED

 NOT FOR PUBLICATION WITHOUT THE
 APPROVAL OF THE APPELLATE DIVISION
 This opinion shall not "constitute precedent or be binding upon any court."
 Although it is posted on the internet, this opinion is binding only on the
 parties in the case and its use in other cases is limited. R. 1:36-3.

 SUPERIOR COURT OF NEW JERSEY
 APPELLATE DIVISION
 DOCKET NO. A-4392-15T1

A.W.,

 Plaintiff-Appellant,

v.

N.M.,

 Defendant-Respondent.

_______________________________

 Submitted September 14, 2017 – Decided October 12, 2017

 Before Judges Nugent and Currier.

 On appeal from the Superior Court of New
 Jersey, Chancery Division, Family Part, Union
 County, Docket No. FV-20-1208-16.

 Ziegler & Zemsky, LLC, attorneys for appellant
 (Steven M. Resnick, on the briefs).

 Ronald A. Cohen, attorney for respondent.

PER CURIAM
 Plaintiff A.W.1 appeals from the denial of his application

for a final restraining order (FRO). Because the trial judge

erred in her determination that a finding of harassment under

domestic violence law requires an instance of abuse or violence,

we reverse.

 We derive the facts from the evidence presented at trial.

While married to other people, the parties engaged in an affair

for approximately five months. Plaintiff alleges that he ended

the relationship, telling defendant N.M. that he did not want any

further contact with her and he intended to tell his wife about

the affair. In the days following that conversation, plaintiff

stated that defendant made hundreds of phone calls to his home,

work, and cell phone. In one phone call, defendant impersonated

a day care worker calling about plaintiff's child so he would

answer the phone. Defendant also came to plaintiff's home,

demanding to speak to his wife, and she sent his wife offensive

text messages.

 Plaintiff reported two incidents to the police when he

observed defendant following him and his family in her car. At

1
 We use initials to refer to the individuals in this case for the
purpose of confidentiality.

 2 A-4392-15T1
one point, when plaintiff stopped at a red light, defendant got

out of her vehicle and ran to plaintiff's car, pounding on the

window and yelling. The following day, plaintiff saw defendant

in her car near his home and then observed her following his family

to the daycare center where plaintiff parked his car. Later that

day, he found his tire slashed.

 As a result of these events, plaintiff applied for, and was

granted, a temporary restraining order (TRO). Although the TRO

was served on defendant, plaintiff stated she continued to call

him at work.2

 When the parties appeared for trial accompanied by counsel

in January 2016, they agreed to enter into a comprehensive consent

agreement. The agreement prevented defendant from having any form

of contact with plaintiff and his immediate and extended family.

It further specified that defendant was restricted from coming

within 100 feet of plaintiff and his family and from going to

certain places.

 Despite the agreement, defendant continued calling

plaintiff's workplace using "*67" so he could not recognize the

incoming number. The phone calls included heavy breathing, silence

upon answering, and hang-ups. Within two weeks of the entry of

2
 Plaintiff changed his cell phone number shortly after the
multitude of phone calls began.

 3 A-4392-15T1
the agreement, defendant sent a bikini-clad photograph of herself

to plaintiff's work email address. She sent Valentine's Day cards

and packets of hot chocolate to his work as well. After each of

these events, plaintiff's counsel sent a letter to defendant's

counsel warning that if defendant continued to violate the

agreement, plaintiff would apply for a TRO.

 The phone calls and communications did not stop, however, and

plaintiff obtained a second TRO on February 24, 2016, on the

grounds of harassment and stalking. Nevertheless, defendant

continued calling plaintiff at work and sending him packages and

letters. Within days of the entry of the TRO, defendant was

observed on a store's surveillance footage purchasing a TracFone3

that she subsequently used to call plaintiff's workplace more than

fifty times. Plaintiff reported these violations of the TRO, and

defendant was arrested and charged with contempt, N.J.S.A. 2C:29-

9(b), and harassment, N.J.S.A. 2C:33-4(a).4

 Trial took place on several days in March and May 2016.

Plaintiff presented defendant's phone records corroborating

3
 "TracFone" is a cell phone company that sells prepaid cell phones
that can be loaded with prepurchased blocks of minutes. TracFone
Wireless, https://en.wikipedia.org/wiki/TracFone_Wireless (last
visited Sept. 27, 2017).
4
 Defendant pled guilty to harassment and was sentenced to one
year of probation.

 4 A-4392-15T1
hundreds of phone calls made prior to and after the entry of the

no-contact agreement, as well as the offensive text messages sent

to his wife. He also presented a witness who observed defendant

in the daycare center parking lot bending near plaintiff's car on

the day his tire was slashed, surveillance footage from the post

office showing defendant mailing packages, and the video showing

the purchase of the TracFone.

 Plaintiff requested the trial judge grant the FRO because he

was scared and feared for the safety of himself and his family.

 Defendant admitted to making the multitude of phone calls and

sending the text messages. She also stated she had sent some of

the packages and cards to plaintiff's office. Although defendant

conceded she bought the TracFone, she denied using it to call

plaintiff, stating that other people living in her house had access

to her phones. She admitted to being in the parking lot on the

day plaintiff's tire was slashed but denied damaging the tire.

 In an oral decision, delivered on May 25, 2016, the trial

judge stated that, despite her determination that neither party

was entirely credible in their respective testimony, she found

that defendant had made hundreds of phone calls to plaintiff on

his cell phone, to his office and home, and sent several of the

packages he received at his office. She also determined that

 5 A-4392-15T1
defendant's actions were a violation of the civil no-contact

agreement.

 However, in considering the harassment statute, N.J.S.A.

2C:33-4, and several published and unpublished cases, the judge

concluded that she could not find that defendant had a purpose to

annoy or alarm plaintiff with her actions because she had not

threatened plaintiff or his family. She stated:

 this [c]ourt cannot find hangups without
 anything more, without voicemail messages
 making any threats, without [defendant] after
 the civil restraint order showing up at
 [plaintiff's] place of business or at his
 house, or if she made any threats to his wife
 or his family or anything like that, this
 record is completely devoid of that.

 What this [c]ourt has before it is
 hangups and a Valentine's Day gift and a
 birthday gift without anything more. And this
 [c]ourt cannot find in evaluating the totality
 of the circumstances that that, in fact, was
 anything more than a disappointed suitor
 trying to repair a romantic relationship. The
 [c]ourt finds nothing in the conduct that's
 violent or abusive or threatening.

 Plaintiff appeals from the denial of the FRO, reiterating the

plethora of evidence presented at trial and arguing that the judge

erred in her finding that plaintiff failed to prove the predicate

act of harassment. We agree.

 We are mindful that our scope of review of the trial judge's

factual findings is limited. Cesare v. Cesare, 154 N.J. 394, 411

 6 A-4392-15T1
(1998). We are generally bound by the trial judge's findings of

fact "when supported by adequate, substantial, credible evidence."

Id. at 411-12. This is especially true when questions of

credibility are involved. Id. at 412. We are not, however, bound

by the trial judge's interpretations of the legal consequences

that flow from established facts. Manalapan Realty, L.P. v. Twp.

Comm., 140 N.J. 366, 378 (1995).

 Before entering an FRO, a trial judge must find, by a

preponderance of the evidence, that a defendant engaged in conduct

that would fit the definition of one or more criminal statutes,

including harassment as defined by N.J.S.A. 2C:33-4, and that the

entry of an FRO is required for the victim's protection. Silver

v. Silver, 387 N.J. Super. 112, 125-126 (App. Div. 2006).

 Plaintiff asserts that defendant harassed him pursuant to

N.J.S.A. 2C:33-4(a), which provides that a person is guilty of

harassment if, with purpose to harass another, he "[m]akes, or

causes to be made, a communication or communications anonymously

or at extremely inconvenient hours, or in offensively coarse

language, or any other manner likely to cause annoyance or alarm."

 In State v. Hoffman, 149 N.J. 564 (1997), our Supreme Court

stated the following elements are required to establish such a

violation:

 7 A-4392-15T1
 (1) defendant made or caused to be made a
 communication;

 (2) defendant's purpose in making or
 causing the communication to be made was to
 harass another person; and

 (3) the communication was in one of the
 specified manners or any other manner
 similarly likely to cause annoyance or alarm
 to its intended recipient.

 [Id. at 576.]

 The Court instructed that "the term 'annoyance' should derive

its meaning from the conduct being scrutinized. . . . [S]ubsection

(a) proscribes a single act of communicative conduct when its

purpose is to harass. Under that subsection, annoyance means to

disturb, irritate, or bother." Id. at 580.

 The judge erred in her determination that the statute and the

governing case law required a finding of abusive or violent conduct

or that defendant must threaten the victim in order to satisfy the

predicate act of harassment. Plaintiff presented overwhelming

evidence of actions taken by defendant that were not only annoying

and irritating, but also intended to intimidate and scare plaintiff

and his family.

 The multitude of phone calls, offensive text messages,

sending of packages and letters, appearing at plaintiff's home and

following plaintiff and his family are more than sufficient to

meet the statutory definition of harassment. See Hoffman, supra,

 8 A-4392-15T1
149 N.J. at 583 (finding that anonymous calls and letters are

invasive of the recipient's privacy and meet the definition of

harassment under the pertinent statute).

 As the Court stated in Hoffman, "[c]ommon sense and

experience" are sufficient to lead to a finding of a purpose to

harass. Supra, 149 N.J. at 577. Defendant admitted to most of

the described actions. The trial judge erred in concluding that

defendant's behavior was not intended to annoy and harass

plaintiff.

 We also note that defendant was charged with contempt for

violating the TRO during the pendency of the FRO trial. The judge

stated several times that there was "no doubt in [her] mind that

. . . [defendant had] violat[ed] [the] civil restraining order."

A finding of prior violations of previous restraints is relevant

to a judge's determination as to whether defendant has engaged in

harassing conduct. N.B. v. S.K., 435 N.J. Super. 298, 307-08

(App. Div. 2014).

 Furthermore, in 2015, the Legislature amended the Domestic

Violence Act, N.J.S.A. 2C:25-19(a)(17), to include contempt of a

domestic violence order as a predicate act of domestic violence.

 Although we are satisfied that the totality of the

circumstances warranted a finding that the harassment statute was

violated, we must still consider whether the second prong of the

 9 A-4392-15T1
Silver test has been met: was there sufficient evidence that an

FRO was necessary to protect plaintiff from future acts of domestic

violence. See Silver, supra, 387 N.J. Super. at 127. The need

for an FRO is not limited to protection from physical harm. This

factor is also satisfied by showing that an FRO would "prevent

further abuse." Ibid. Since harassment is one of the enumerated

predicate acts of domestic violence, the need to prevent further

harassment will suffice. Although the court should assess the

factors set forth in N.J.S.A. 2C:25-29(a)(1)–(6), to determine if

the protection of a FRO is necessary, Silver, supra, 387 N.J.

Super. at 127, we note the statute does not limit the court's

analysis to those factors. See N.J.S.A. 2C:25-29(a) (listing the

factors a "court shall consider but not be limited to").

 Based on her conclusion that plaintiff had not proven the

predicate act of harassment, the trial judge did not make any

findings of whether an FRO was required for plaintiff's protection.

While ordinarily we would remand for such findings, we are

confident that applying the law to the facts as found by the trial

judge will result in the conclusion that an FRO is necessary under

these circumstances. Despite the entry of civil restraints and

several TROs, defendant continued to repeatedly call plaintiff and

send him packages and letters. She was not deterred by any of the

prior court orders but rather attempted to communicate with

 10 A-4392-15T1
plaintiff by more anonymous means such as using a blocked call

feature and a TracFone.

 We, therefore, reverse and remand to the trial court for the

entry of an FRO with appropriate protections.

 Reversed and remanded. We do not retain jurisdiction.

 11 A-4392-15T1