# RECORD IMPOUNDED

**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0650-21

K.S.,[1]

    Plaintiff-Appellant,

v.

S.H.,

    Defendant-Respondent.

_____

Argued October 4, 2022 – Decided October 20, 2022

Before Judges Rose and Gummer.

On appeal from the Superior Court of New Jersey, Chancery Division, Family Part, Gloucester County, Docket No. FV-08-0302-22.

Eric R. Foley argued the cause for appellant (Afonso Archie & Foley, PC, attorneys; Eric R. Foley, on the brief).

Respondent has not filed a brief.

PER CURIAM

---

[1] We use initials in accordance with Rule 1:38-3(d)(10).

In this unopposed domestic violence matter, plaintiff K.S. appeals from a September 30, 2021 order, denying her application for a final restraining order (FRO), dismissing her domestic violence complaint, and dissolving her temporary restraining order (TRO) against her former domestic partner, defendant S.H., pursuant to the Prevention of Domestic Violence Act, N.J.S.A. 2C:25-17 to -35. Instead, the trial judge continued civil restraints under the parties' October 29, 2018 consent order.

Plaintiff now appeals, raising two points for our consideration:

POINT I

THE TRIAL COURT COMMITTED REVERSIBLE ERROR WHEN IT MISAPPLIED THE PREVAILING LEGAL STANDARDS WHEN IT DETERMINED THAT THERE WAS NO NEED FOR AN FRO TO PROTECT THE VICTIM.

POINT II

ALTERNATIVELY, THE MATTER SHOULD BE REMANDED FOR A NEW TRIAL [BECAUSE] . . . PLAINTIFF WAS DENIED HER DUE PROCESS RIGHTS WHERE THE TRIAL COURT FAILED TO UNDERTAKE ITS RESPONSIBILITY AS THE TRIER OF FACT WHEN IT FAILED TO REVIEW AND CONSIDER THE EVIDENCE THAT WAS BEFORE THE COURT.

More particularly, plaintiff contends the trial judge failed to apply the governing law in view of the history and proliferation of defendant's harassing

A-0650-21

communications, which repeatedly violated the parties' consent order imposing civil restraints. Accordingly, plaintiff seeks reversal of the dismissal order and entry of an FRO. Alternatively, plaintiff seeks a new trial before another judge, contending the judge failed to review her voluminous exhibits.

Because it is unclear from the record whether the trial court considered plaintiff's exhibits, we vacate the dismissal order. Because the trial court did not afford counsel the opportunity to present closing arguments, failed to fully comply with Rule 1:7-4, and made credibility findings, we remand for a retrial before another judge.

I.

We set forth, in some detail, the history between the parties from the record before the trial judge to give context to plaintiff's contentions on appeal. The parties were never married but have three children together: M.H., born in April 2015; L.H., born in September 2016; and E.H., born in May 2018. Plaintiff has two other children from a previous marriage: M.S., born in April 2005; and J.S., born in March 2007.

Sometime in 2018, the Division of Child Protection and Permanency filed an abuse and neglect action against defendant following allegations that he had sexually abused plaintiff's oldest child, M.S. Plaintiff's ensuing TRO was

A-0650-21

dissolved on October 29, 2018, when the parties executed a civil consent order that imposed civil restraints and addressed defendant's parenting time. The provisions pertaining to civil restraints prohibited the parties from: "having oral, written, personal, electronic[,] or other form of contact or communication with the other party or through a third party unless authorized herein"; "stalking, following[,] or threatening to harm, stalk[,] or follow the other party"; or "going to the other part[y's] residence."

Apparently, the spirit of compromise reflected in the October 29, 2018 consent order was short lived. During the pendency of the abuse and neglect litigation, plaintiff moved for enforcement of the civil restraints. On February 14, 2019, a Family Part judge found defendant "sexually abused, verbally abused, emotionally abused[,] and physically abused" M.S. That same day, the judge continued mutual restraints, prohibiting both parties from "engag[ing] in disparaging or inflammatory communication utilizing social media," or "dispara[ging] the other parent in the presence of the children."

On October 10, 2019, the Family Part judge terminated the abuse and neglect litigation. Among other things, the judge ordered contact between the parties through the My Family Wizard application, "limited to three lines, only relating to scheduling/activities regarding the [parties'] three children."

4

The parties returned to court on November 6, 2019, following plaintiff's motion to enforce civil restraints. Plaintiff withdrew her application. In exchange, the parties agreed to continue mutual restraints and stop using the My Family Wizard application. Instead, the parties agreed to utilize two specified third-party facilitators for all communications concerning the children.

Nonetheless, in June 2020, defendant sent plaintiff multiple text messages demanding payment for his unreturned engagement ring. As one notable example, on June 23, 2020, defendant sent five successive text messages, stating:

> Oh & its [sic] $3,230.64. Maybe I'll just cut off chops [sic] support until my property is returned? Or did you file the renters insurance claim that you stated before? I haven't seen a dime you CUNT.
>
> You gonna call in a midnight TRO? Go for it. You waste of life. Return my property.
>
> Make sure you add the facts. All of them.
>
> S[.] H[.]:
> -no firearms
> -is not harassing me only asking about he [sic] children
> -wants his engagement ring back totaling $3,230.64
> Pretty simple.

A-0650-21

Oh and make sure that you leave my children in the care of a suicidal/drug addict 15[-]year[-]old [laughing emoji].[2]

On August 19, 2020, defendant sent plaintiff another barrage of text messages, including: "God you're a literal waste of life"; and "[e]ver thought about allowing them to be l it [sic] me for more than 22 hours you fucking cunt? Ever thought about nit keep [sic] them from me you twat? Fuck you."

Defendant continued sending plaintiff multiple messages contrary to the terms of the October 29, 2018 consent order. For example, in September 2020, defendant sent four consecutive identical messages demanding return of his engagement ring, stating: "Don't forget to send my engagement ring, slut." In October, defendant began a lengthy message, stating: "You are a genuine piece of shit. Period." The message ended with a rhetorical inquiry: "What are you going to do when you can't hide be [sic] your bullshit & the kids can't stand you anymore you fucking *CUNT*."

On December 28, 2020, plaintiff notified the TextFree support desk that defendant had utilized its service since September 2020 to generate fifty-two different numbers to harass her in violation of the parties' consent order.

---

2 We glean from the record that M.S. is the fifteen-year-old child referenced in defendant's message.

6

Plaintiff asserted she blocked each number but defendant "just keeps getting a new one." Defendant sent a text message to plaintiff acknowledging he sent the messages but claimed, among other things, all messages were related to the parties' three children.

In January 2021, defendant switched his mode of communication to email. Defendant maintained all communication was related to the welfare of the parties' three children.

Sometime thereafter, defendant moved for joint custody or increased parenting time and plaintiff cross-moved for violation of the civil restraints. On July 1, 2021, another judge granted defendant's application for increased parenting time, with continued supervision. The judge ordered the parties to communicate regarding the children, only, through the AppClose application, but limited messages to "a total of two times per interaction." The order also provided: "Dad is on notice that if he continues to violate the civil restraints in place, the court may significantly reduce or terminate his parenting time." Undeterred, in July and August 2021, defendant sent multiple successive messages via AppClose at various hours of the day and night.

On September 3, 2021, plaintiff filed a domestic violence complaint, alleging defendant committed the predicate act of harassment between August

7

30, 2021 and September 1, 2021, by sending plaintiff multiple messages through the court-authorized parenting application, sending her direct messages, and telephoning her, in violation of the October 29, 2018 consent order. Plaintiff also alleged a history of similar harassing communications during the previous three years.

Trial was held before the same judge who issued the July 1, 2021 order. During the thirty-minute trial, both parties were represented by counsel. Plaintiff testified on her own behalf and introduced into evidence fifty-one exhibits, including three video clips.[3] Defendant did not testify. It is unclear from the record whether the twenty-five exhibits defendant marked for identification were moved into evidence.[4] Neither party called any witnesses.

All three video clips were played during plaintiff's direct examination. According to plaintiff, the first clip depicted defendant driving by her home on an unspecified date in 2019. The second clip included audio of two of the parties' children. One child stated defendant called plaintiff "a rat bag." The

_____

[3] The video clips were not provided on appeal.

[4] Plaintiff raised no objection to the admission of defendant's exhibits, which are included in her appendix on appeal. As explained below, we cannot discern from the record whether the judge considered defendant's exhibits.

third clip was a brief segment of defendant's FaceTime call with the children during which he directed comments to plaintiff, including, "Record away, K[.S.] See you in court."

Plaintiff testified that she needed the protection of an FRO because defendant

> just doesn't ever stop ever. I wake up in the morning and there's [sic] ten messages from him. . . . [I]t'll be 5:30 in the morning and there's [sic] already messages waiting. He does it all day long. He threatens to come to my house all the time. . . . [H]e just keeps trying to torture me constantly with all of the communication. He calls my phone and he's not supposed to call my phone. He's not supposed to text me directly. He's only supposed to use the parenting app and that doesn't stop him either. Nothing does.
>
> He calls FaceTime all the time. He's constantly making comments. Every time the kids have their . . . FaceTime videos, it's constant. It's all the time. It doesn't stop. It never, ever, ever, ever stops.

Plaintiff continued, explaining that defendant had been engaging in the same conduct "for three years and it doesn't matter what [she does] to try to make it stop." Concerned that defendant will "show up at the house," plaintiff felt defendant was "torturing" her with his "constant and relentless" messages, some of which were sent via the children.

9

A-0650-21

On cross-examination, plaintiff acknowledged she had engaged in a consensual exchange of text messages with defendant in August 2021, wherein they arranged for defendant to drop off something for the girls when she was not home. However, plaintiff denied that the majority of defendant's AppClose messages concerned the children. Plaintiff also acknowledged she called the police when defendant arrived at the school on M.H.'s first day. On redirect examination, plaintiff explained she contacted police because defendant approached her car when she dropped off M.H. at school.

Immediately, following plaintiff's testimony, the trial judge declared he was "not going to proceed anymore." The judge commenced his oral decision without affording counsel the opportunity to present closing statements. Briefly referencing the trial exhibits, the judge stated: "I see the exhibits you[5] have. I've gone through briefly the exhibits that [plaintiff's counsel] has submitted, and I've heard the testimony of [plaintiff]."

The judge cited no statutory authority or caselaw to support his decision. Instead, the trial judge admonished both parties, stating: "This court is here to protect litigants from violence, okay? You two don't get along. Somebody

---

[5] Because the judge did not reference the exhibits by number, it is unclear whom he was addressing.

A-0650-21

doesn't get the message about no contact." Apparently referencing the video clip of the children, the judge addressed defendant, stating: "I don't know if you actually said that to the children. I don't know who's putting on who[m] here with respect the children. Using your children is totally unacceptable on both of you." The judge continued:

> This is not a game. This particular court is not to be used as a vehicle for you to cut off parenting time. It's not to be used as a vehicle to harass anybody. The . . . number of calls alone is harassment. Do I think . . . it meets the next level with respect to the necessity of issuing a final restraining order? No, I don't; okay? Keep your finger off the phone.

Addressing plaintiff, the judge stated: "I've been observing your demeanor. I've evaluated your credibility. The kind of exchanges you have are apparently the kind of exchanges that you want to have." He further stated "[m]a'am, you precipitate a lot of this; okay . . . I'm frankly not impressed by your emoting over things that you precipitate."

At the conclusion of the trial, the judge entered a memorializing order dismissing plaintiff's domestic violence complaint and dissolving the TRO. The judge left undisturbed the October 29, 2018 consent order with civil restraints. This appeal followed.

A-0650-21

II.

Ordinarily, "[w]e accord substantial deference to Family Part judges, who routinely hear domestic violence cases and are 'specially trained to detect the difference between domestic violence and more ordinary differences that arise between couples.'" C.C. v. J.A.H., 463 N.J. Super. 419, 428 (App. Div. 2020) (quoting J.D. v. M.D.F., 207 N.J. 458, 482 (2011)), certif. denied, 244, N.J. 339 (2022). "[D]eference is especially appropriate 'when the evidence is largely testimonial and involves questions of credibility.'" MacKinnon v. MacKinnon, 191 N.J. 240, 254 (2007) (quoting Cesare v. Cesare, 154 N.J. 394, 412 (1998)).

Generally, "findings by a trial court are binding on appeal when supported by adequate, substantial, credible evidence." Gnall v. Gnall, 222 N.J. 414, 428 (2015). We will not disturb a trial court's factual findings unless "they are so manifestly unsupported by or inconsistent with the competent, relevant[,] and reasonably credible evidence as to offend the interests of justice." Cesare, 154 N.J. at 412. We do not accord such deference to the court's legal conclusions, which we review de novo. Thieme v. Aucoin-Thieme, 227 N.J. 269, 283 (2016).

The entry of a final restraining order under the Act requires the trial court to make certain findings pursuant to a two-step analysis. See Silver v. Silver, 387 N.J. Super. 112, 125-27 (App. Div. 2006). Initially, the court "must

determine whether the plaintiff has proven, by a preponderance of the credible evidence, that one or more of the predicate acts set forth in N.J.S.A. 2C:25-19(a) has occurred." Id. at 125 (citing N.J.S.A. 2C:25-29(a)).

Harassment, as defined by N.J.S.A. 2C:33-4, is one of the predicate acts of domestic violence. N.J.S.A. 2C:25-19(a)(13). Harassment occurs when a person:

> a. Makes, or causes to be made, a communication or communications anonymously or at extremely inconvenient hours, or in offensively coarse language, or any other manner likely to cause annoyance or alarm;
>
> b. Subjects another to striking, kicking, shoving, or other offensive touching, or threatens to do so; or
>
> c. Engages in any other course of alarming conduct or of repeatedly committed acts with purpose to alarm or seriously annoy such other person.
>
> [N.J.S.A. 2C:33-4.]

A finding of harassment under the first Silver prong requires proof that the defendant acted "with purpose to harass." N.J.S.A. 2C:33-4; see Silver, 387 N.J. Super. at 124. An act in violation of a civil restraint may support an allegation of harassment. See N.B. v. S.K., 435 N.J. Super. 298, 307-08 (App. Div. 2014). Courts "must consider the totality of the circumstances to determine

whether the harassment statute has been violated." H.E.S. v. J.C.S., 175 N.J. 309, 326 (2003) (quoting Cesare, 154 N.J. at 404).

If the court finds the defendant committed a predicate act of domestic violence, the court must then determine whether it "should enter a restraining order that provides protection for the victim." Silver, 387 N.J. Super. at 126. In those cases where "the risk of harm is so great," J.D. 207 N.J. at 488, the second inquiry "is most often perfunctory and self-evident." Silver, 387 N.J. Super. at 127. In all cases, "the guiding standard is whether a restraining order is necessary, upon an evaluation of the factors included in N.J.S.A. 2C:25-29(a)(1) to -29(a)(6), to protect the victim from an immediate danger or to prevent further abuse." Ibid.; see also D.M.R. v. M.K.G., 467 N.J. Super. 308, 324 (App. Div. 2021) (holding "[i]n determining whether a restraining order is necessary, the judge must evaluate the factors set forth in N.J.S.A. 2C:25-29(a)(1) to -29(a)(6)"). Those factors are:

> (1) The previous history of domestic violence between the plaintiff and defendant, including threats, harassment and physical abuse;
>
> (2) The existence of immediate danger to person or property;
>
> (3) The financial circumstances of the plaintiff and defendant;

14

(4) The best interests of the victim and any child;

(5) In determining custody and parenting time the protection of the victim's safety; and

(6) The existence of a verifiable order of protection from another jurisdiction.

[N.J.S.A 2C:25-29(a).]

"A history of domestic violence may serve to give content to otherwise ambiguous behavior and support entry of a restraining order." J.D., 207 N.J. at 483.

Because "the Legislature did not intend that the commission of one of the enumerated predicate acts of domestic violence automatically mandates the entry of" an FRO, a trial judge is required to make specific findings as to whether restraints were necessary to "protect the victim from an immediate danger or to prevent further abuse." Silver, 387 N.J. Super. at 126-27. "That inquiry serves to ensure that the protective purposes of the Act are served, while limiting the possibility that the Act, or the courts, will become inappropriate weapons in domestic warfare." J.D., 207 N.J. at 488.

We have expressed concerns "that the Act may be misused in order to gain advantage in a companion matrimonial action or custody or visitation action." Kamen v. Egan, 322 N.J. Super. 222, 229 (App. Div. 1999). More recently,

however, we have observed a violation of a civil restraining order is not a violation of the Act, although it can provide important context supporting a finding of intent to commit one of the enumerated acts in the statute. See N.B., 435 N.J. Super. at 307-08.

As a preliminary matter, we agree with plaintiff that it does not appear the judge considered her documentary exhibits, which spanned nearly 200 pages. Because the judge did not identify any evidence by exhibit number, we cannot be sure he considered the evidence, including the crude content of defendant's repeated text messages. Nor is it clear whether the judge considered defendant's twenty-five exhibits or whether they were moved into evidence. Compounding these evidentiary issues, the judge did not afford the parties the opportunity to make closing statements.

Moreover, the judge failed to correlate his factual findings with any citation to, or analysis of, the governing law. See R. 1:7-4(a) (requiring the court in non-jury trials "by an opinion or memorandum decision, either written or oral" to "find the facts and state its conclusions of law"); Elrom v. Elrom, 439 N.J. Super. 424, 443 (App. Div. 2015). Although the judge found "the number of calls alone is harassment," he failed to cite the statutory provision violated. Even more troubling, the judge made no findings concerning the parties'

A-0650-21

previous history of domestic violence, notwithstanding plaintiff's testimony and her documentary evidence.

Accordingly, our review is hampered both by the trial judge's cursory evaluation of the evidence presented at trial, and his failure to make the requisite findings. Thus, we are unable to review whether the judge's findings were "supported by adequate, substantial, credible evidence." Gnall, 222 N.J. at 428. In view of the trial judge's credibility assessment, the case should be assigned to another judge. See R. 1:12-1(d); Pressler and Verniero, Current N.J. Court Rules, cmt. 4 on R. 1:12-1 (2023) (stating "the appellate court has the authority to direct that a different judge consider the matter on remand in order to preserve the appearance of a fair and unprejudiced hearing").

We therefore vacate the order dismissing plaintiff's domestic violence complaint; reinstate the TRO; and remand the matter for a new trial before another judge. In remanding this matter, we express no opinion on the merits of the FRO application. Instead, we direct the new trial judge to fully consider the evidence and issue a decision pursuant to Rule 1:7-4.

Reversed and remanded. We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

17