**RECORD IMPOUNDED**

NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0898-12T4
A-0899-12T4

N.B.,

　　　　　Plaintiff-Appellant,

　　v.

S.K.,

　　　　　Defendant-Respondent.

_____

┌─────────────────────────────┐
│ **APPROVED FOR PUBLICATION** │
│                             │
│ **March 24, 2014**          │
│                             │
│ **APPELLATE DIVISION**      │
└─────────────────────────────┘

Submitted March 4, 2014 — Decided March 24, 2014

Before Judges Fisher, Koblitz and O'Connor.

On appeal from the Superior Court of New Jersey, Chancery Division, Family Part, Monmouth County, Docket No. FV-13-1306-02E in A-0898-12 and Docket No. FV-13-1882-12 in A-0899-12.

Drazin and Warshaw, attorneys for appellant (Vincent L. Stripto, on the brief).

Theodore Sliwinski, attorney for respondent.

The opinion of the court was delivered by

FISHER, P.J.A.D.

These appeals require consideration of the not uncommon circumstance, during settlement of a divorce action, of a domestic violence victim's agreement to vacate a final restraining order (FRO) entered pursuant to the Prevention of

Domestic Violence Act (the PDVA), N.J.S.A. 2C:25-17 to -35, and to replace the FRO with restraints in the divorce action (the matrimonial restraints). Here, in 2012, after the matrimonial restraints proved ineffectual for years, plaintiff N.B. filed a domestic violence action and, upon that action's dismissal, unsuccessfully moved for relief from a 2003 order that vacated her 2002 FRO. We agree the trial judge erred in granting an involuntary dismissal of plaintiff's 2012 domestic violence action because he mistakenly failed to give sufficient consideration to defendant S.K.'s past and present violations of the matrimonial restraints and, therefore, reverse and remand for a new trial. We affirm the denial of the motion to vacate the 2003 order that vacated the 2002 FRO solely because plaintiff failed to seek that relief within a reasonable period of time, and we express no view of the merits of that argument had relief been timely sought.

I

The parties were married in 1993. As the marriage disintegrated, they filed actions pursuant to the PDVA. Plaintiff obtained her FRO because defendant pushed her down a flight of stairs. Defendant also obtained an FRO in 2002 against plaintiff; the factual basis for that order is not revealed by the record on appeal.

In 2003, while in the midst of a divorce trial, the parties reached a settlement. Their property settlement agreement (PSA) stipulated to the vacation of the FROs.[1] The PSA also contains the parties' mutual consent to being "enjoined and restrained from harassing" the other and declared that all communications between them "shall be by e-mail and shall be related to the children only, except to the extent the communications are in the presence of or otherwise monitored by the parenting facilitator." A dual judgment of divorce, which incorporated the PSA, was entered on April 14, 2003.[2]

Apparently, defendant violated the matrimonial restraints at various times by placing numerous telephone calls to plaintiff and by sending emails to every known email address for plaintiff, including her place of employment. Consequently, plaintiff moved for enforcement of the matrimonial restraints. On October 20, 2006, the motion judge entered an order that directed the parties to stop harassing and annoying each other; defendant was further ordered to communicate with plaintiff "by e-mail only, about the children only, and us[e] exclusively the

---

[1] In a later proceeding, plaintiff testified she was "very reluctant and very afraid of letting go" of the FRO but was advised by her attorney at the time — not her current attorney — that it was "absolutely the right thing to do."

[2] The record on appeal does not specify the date the FROs were vacated, but we assume that it occurred in 2003.

e-mail address 'NxxxKxxxx@aol.com[,]'[3] except in the case of an emergency."

In January 2009, plaintiff commenced a domestic violence action, alleging defendant made harassing and annoying communications. Plaintiff testified at the 2009 trial that voice messages defendant left for her were "[a]ngry, abusive, furious and just scary." The judge who presided over the 2009 trial recognized that defendant had violated the 2006 order; indeed, defendant seems to have conceded that. And the judge recognized that defendant left "offensive" messages. The judge, however, found that defendant "c[a]me up to the line" but did not "cross[] the line into domestic violence," and, therefore, dismissed the action.[4] The judge entered an order that not only dismissed the action but repeated the terms of the 2006 matrimonial order and further declared that "[a]ny violation of this directive shall allow the [d]efendant to seek the issuance of another [r]estraining [o]rder."

## II

That past is prologue to the matters now before us.

---

[3]We have altered this address to protect plaintiff's privacy.

[4]Although the order makes no mention, at that time plaintiff also sought but was <u>sub silentio</u> denied the reinstatement of the 2002 FRO.

A-0898-12T4

Plaintiff filed a new domestic violence action on June 27, 2012, alleging that defendant made harassing communications when, on June 24, 2012, he left four voice messages on a telephone the prior orders had barred him from calling and that he "called her almost every day." At trial, plaintiff sought to provide testimony and evidence regarding the prior proceedings and prior orders to give context and meaning to the more recent communications. The trial judge[5] largely prohibited this, as revealed during the following colloquy:

> THE COURT: You know, Mr. Stripto, I don't know of any authority that provides that a violation of any civil order is an act of domestic violence.
>
> MR. STRIPTO: Your Honor, it's not so much that it's an [act] of domestic violence, it goes, — we are dealing with an allegation of harassment.
>
> THE COURT: Okay. You are either going to establish harassment or you're not based on the allegations of [June] 24th. I ask you move on again, to the allegations of the 24th. If that [does] not result in a final restraining order, the fact that additional civil restraints were entered, is of no moment here.

And, when plaintiff's testimony — truncated by that ruling — ended, the following additionally colloquy occurred:

> THE COURT: . . . Plaintiff rests?

---

[5]The trial judge had not presided over any of the prior matters.

A-0898-12T4

[PLAINTIFF'S COUNSEL]: No, I have another witness.

THE COURT: I want an offer of proof.

[PLAINTIFF'S COUNSEL]: [S.K.], Judge, I want to call the defendant.

THE COURT: No, no, you don't prove your case by calling the defendant.

[PLAINTIFF'S COUNSEL]: Judge, there are specific orders in this case —

THE COURT: Sir.

[PLAINTIFF'S COUNSEL]: It is my burden —

THE COURT: I've made my ruling.  Do[es] [defendant] have a motion?

Defense counsel then moved for a "directed verdict," arguing plaintiff had asserted only that defendant had left voice messages and "there has to be a communication." Plaintiff's counsel responded by again arguing that prior court orders barred defendant from calling that particular telephone number,[6] and that defendant's continued and intentional violation

---

[6]In the 2009 domestic violence action, defendant testified and asserted that he telephoned a prohibited number because he had been unsuccessful in reaching the parties' two children — who were then twelve and nine years old — when calling the children's cellphones.  Because the trial judge in the matter at hand mistakenly refused to permit plaintiff to call defendant to the witness stand, the record does not suggest defendant's purpose in violating the matrimonial restraints.  Because of the particular stage at which this case was dismissed, we must assume defendant acted with a purpose to harass plaintiff.  See R. 4:37-2(b).

of those orders constituted harassment. In response to the judge's questioning, plaintiff's counsel conceded there was no case law to support the proposition that the violation of "civil restraints" constitutes an act of domestic violence within the meaning of the PDVA, but he argued that the conduct constituted harassment. Plaintiff's counsel also sought relief from the 2003 order, which vacated the 2002 FRO, since only an FRO had been effective in restraining defendant from attempting to communicate with plaintiff.

The trial judge compared plaintiff's allegations with the provisions of N.J.S.A. 2C:33-4(a), which declares that "a person commits a petty disorderly persons offense if, with purpose to harass another, he . . . [m]akes, or causes to be made, a communication or communications anonymously or at extremely inconvenient hours, or in offensively coarse language, or any other manner likely to cause annoyance or alarm." The judge recognized that the telephone calls were not made anonymously or at inconvenient hours, and that — as plaintiff testified — the messages did not contain "offensively coarse language."[7] In

---

[7]The judge observed that plaintiff's failure to preserve the messages was "telling." To the extent this comment suggested the trial judge's doubt about plaintiff's credibility, that determination was inconsistent with Rule 4:37-2(b), which governed the judge's examination of the facts at that stage. The trial judge was required to assume — as do we — the truth of
(continued)

considering the final phrase of N.J.S.A. 2C:33-4(a), the judge rejected plaintiff's argument that the June 24, 2012 messages — when viewed in the context of all that preceded them — could be viewed as "likely to cause annoyance or alarm." Specifically, the judge reached this conclusion by relying on the fact that no court had previously found a violation of a matrimonial restraining order to be an act of domestic violence. An order of dismissal was entered on July 16, 2012.

Following dismissal, plaintiff moved for relief from the 2003 order that vacated the 2002 FRO and, in the alternative, for reconsideration of the dismissal of the domestic violence action. The trial judge was no longer available, and the motion was assigned to another judge (the motion judge),[8] who declined to reconsider and also concluded that to permit the reinstatement of the FRO so many years later "would create havoc in the courts." The order denying the motion was entered on September 24, 2012.

(continued)
plaintiff's testimony and to afford her all legitimate inferences. In short, the judicial function at this stage "is quite a mechanical one"; a trial judge must not be concerned "with the worth, nature or extent (beyond a scintilla) of the evidence, but only with its existence, viewed most favorably to the party opposing the motion." Dolson v. Anastasia, 55 N.J. 2, 5-6 (1969).

[8]Like the trial judge, the motion judge had not presided over the prior proceedings.

Plaintiff appeals the orders of July 16 and September 24, 2012.[9]

III

In considering whether to grant an involuntary dismissal, the trial judge was limited to considering whether, "upon the facts and upon the law[,] the plaintiff has shown no right to relief."  R. 4:37-2(b).  The trial judge's ruling on this question, as well as his exclusion of evidence concerning defendant's past violations of the matrimonial restraints, turned — as does our review — on this question:  what is the significance in a domestic violence action of a defendant's violation of a matrimonial restraining order?

In examining that question, the trial judge relied on the absence of legal authority to support a ruling that a violation of a matrimonial order can constitute an act of domestic violence.  To be sure, the judge was correct on that specific point because the Legislature defined "domestic violence" only by referring to a series of criminal statutes.  See N.J.S.A. 2C:25-19(a). We agree that a domestic violence action cannot be sustained absent proof of one of those specifically enumerated

---

[9]The two trial court orders were separately appealed; we now consolidate these appeals and decide them by this single opinion.

acts. Although the PDVA is to be liberally construed because it is remedial in nature, Cesare v. Cesare, 154 N.J. 394, 400 (1998), and although the Legislature has expressed the PDVA's intent "to assure the victims of domestic violence the maximum protection from abuse the law can provide," N.J.S.A. 2C:25-18, our courts are not free to expand the meaning of domestic violence beyond the contours so clearly delineated by the Legislature.

To put this discussion in perspective, however, we observe that plaintiff did not argue in the trial court that she had a right to an FRO because defendant violated the matrimonial restraints contained in the PSA or in later orders. To the contrary, plaintiff alleged that defendant engaged in an act, or acts, of harassment by leaving five voice messages[10] on a telephone he was ordered not to call. And, as evidence of her claim that these messages were "alarm[ing] or seriously annoy[ing]," and made with the purpose to harass, N.J.S.A. 2C:33-4(c), plaintiff sought admission of the prior orders and evidence of prior violations of those orders as a means of demonstrating how alarming or annoying these telephone calls were to her. We agree with plaintiff that this evidence was

---

[10]Plaintiff alleged in her complaint that defendant left four voice messages, but testified about five messages. That difference has no bearing on our disposition of these appeals.

relevant to whether defendant engaged in harassing conduct on June 24, 2012, and that the trial judge erred in excluding this evidence.

The greatest difficulties encountered with the day-to-day application of the PDVA in our trial courts have been with claims of domestic violence based on alleged acts of harassment. In determining the extent of the authority granted by the PDVA for courts to intervene in such disputes, the many decisions of our jurisprudence reveals the importance of the context or setting in which the act or acts of harassment occurred. This was never made more clear than in the opinions authored by then Judge (later Justice) Long for this court in Peranio v. Peranio, 280 N.J. Super. 47 (App. Div. 1995), and Corrente v. Corrente, 281 N.J. Super. 243 (App. Div. 1995). In both cases, the court recognized the importance of evaluating the alleged harassing conduct in the particular context of the parties' relationship, concluding that a childish verbal conflict — or, in Judge Long's words, "ordinary domestic contretemps," Peranio, supra, 280 N.J. Super. at 57 — between individuals in the throes of a dissolving marriage is not sufficient to warrant an FRO. In other words, the conduct in Peranio — the statement "I'll bury you," id. at 55 — was viewed as having little significance when uttered by one spouse to another when on the verge of a divorce. But that

is not to say that, in a different setting, the same utterance might not constitute harassment justifying issuance of an FRO. Our courts would doubtless reach a different result if, after a first date, an individual asking for but being denied a second date, were to say: "I'll bury you."

In short, "courts must consider the totality of the circumstances to determine whether the harassment statute has been violated." Cesare, supra, 154 N.J. at 404; see also State v. Hoffman, 149 N.J. 564, 577 (1997) (holding that the purpose to harass required "may be inferred from . . . [c]ommon sense and experience"); J.F. v. B.K., 308 N.J. Super. 387, 391 (App. Div. 1998) (observing that "absent a showing of surrounding circumstances which could support a finding that such ordinarily innocuous conduct constituted an act of harassment . . . such conduct could not establish the predicate crime for a finding of domestic violence"). Whether conduct "rises to the level of harassment or not is fact-sensitive[,] [and] [t]he smallest additional fact or the slightest alteration in context, particularly if based on a history between the parties," may make a considerable difference in the application of the PDVA. J.D. v. M.D.F., 207 N.J. 458, 484 (2011) (emphasis added).

And so, defendant's conduct on June 24, 2012, in leaving five voice messages — even though they were not anonymous, or

made at inconvenient hours, or expressed in coarse language —
might not have been more than "ordinary domestic contretemps" if
occurring during the dissolution of the parties' marriage. But,
as the record reveals, these parties were divorced a decade
earlier and it was alleged that, during that decade, defendant
repeatedly was ordered not to communicate with plaintiff in that
fashion and repeatedly violated those orders. Whether the five
voice messages in question were meant to or did in fact alarm or
seriously annoy plaintiff, thereby warranting entry of the FRO
plaintiff sought, can only be fairly understood in light of this
history. Plaintiff was entitled to submit evidence of the past
violations of the matrimonial restraints, not because the
violations of those orders are per se "acts of domestic
violence" — they are not — but because those past violations
support the claim that defendant engaged in acts of harassment
by making communications "with purpose to alarm or seriously
annoy." That evidence explains <u>why</u> the recipient would be
alarmed or seriously annoyed by the communications.[11]

---

[11]In light of our disposition, and because defendant did not
argue in the trial court a denial of due process, we need not
decide the extent to which a plaintiff is required to set forth
such illuminating past circumstances in the complaint. <u>See</u>
<u>H.E.S. v. J.C.S.</u>, 175 <u>N.J.</u> 309, 321-25 (2003).

The trial judge erred when he excluded evidence of past violations of the matrimonial restraints and when he granted an involuntary dismissal. We, thus, reverse and remand for a new trial.[12]

IV

We lastly turn to plaintiff's contention that the motion judge erred in refusing in 2012 to grant relief from the 2003 order that vacated the 2002 FRO. In considering this point, we recognize that it is not uncommon for litigants to consent to a vacation of their FROs while in the course of settling their matrimonial disputes. Certainly, a victim of domestic violence takes a risk in so agreeing, because the violation of a matrimonial order may not trigger the swift and effective enforcement available to domestic violence victims protected by FROs. There is no greater proof of that generality than what has occurred here.

---

[12]Although no longer necessary to our decision, we also observe that the trial judge erred when he barred plaintiff from calling defendant to the witness stand. Neither the rules of procedure nor the rules of evidence prohibit a civil litigant from calling an adverse party to testify. And, even though we recognize that trials in domestic violence matters are usually brief, loosely-conducted affairs, our courts must be vigilant to ensure that parties' procedural due process rights are maintained. See J.D., supra, 207 N.J. at 481; Peterson v. Peterson, 374 N.J. Super. 116, 124-25 (App. Div. 2005).

But, a victim of domestic violence — while understanding that significant rights are waived when stipulating to the dissolution of an FRO — likely does not anticipate our courts will refuse, as here, to enforce the superseding matrimonial restraints. As a result, it is understandable, after attempting to gain a cessation of defendant's alleged continual attempts at communication with her in violation of the matrimonial restraints,[13] that plaintiff would attempt to regain the FRO previously surrendered.

The PDVA provides courts with the authority to "dissolve[] or modif[y]" a final order in a domestic violence action, N.J.S.A. 2C:25-29(d), and Rule 4:50-1 authorizes the granting of relief from an order or judgment in the interest of justice in a variety of circumstances, or, in the words of Rule 4:50-1(f), for "any other reason justifying relief from the operation of the judgment or order." Although it would no doubt be a rare case in which this relief could be successfully obtained in light of the precautions that precede the vacation of an FRO, we

---

[13]Although plaintiff's prior enforcement motions resulted only in additional, largely redundant orders, our family judges should be mindful of the authority, provided by Rule 1:10, to impose monetary sanctions or incarceration as a means of securing compliance. See, e.g., Milne v. Goldenberg, 428 N.J. Super. 184, 198 (App. Div. 2012); Board of Educ. of Middletown v. Middletown Twp. Educ. Ass'n, 352 N.J. Super. 501, 508-11 (Ch. Div. 2001).

A-0898-12T4

see no impediment that would bar relief in all cases.[14] The victim's burden at such a stage would be considerable. Certainly, the movant would be required to demonstrate an imminent need for protection and would be expected to address the past desire — presumably expressed only after being professionally counseled and after a judge's searching inquiry, see New Jersey Domestic Violence Procedures Manual, § 4.19.1 (October 2008) — for the vacation of the FRO.[15] Notwithstanding such obstacles, there may be instances in which relief might be warranted.

We do not reach the merits of plaintiff's motion, however. As with any such application, the court is obliged to consider whether the movant has sought relief with reasonable expedition. Here, the record demonstrates that the FRO was vacated in 2003. Enforcement of the matrimonial restraints was sought in 2006, and a new domestic violence action was commenced but found insufficient to warrant issuance of an FRO in 2009. By the time of the unsuccessful motion now before us, any right to relief

---

[14]Both T.M. v. J.C., 348 N.J. Super. 101 (App. Div. 2002), and C.O. v. J.O., 292 N.J. Super. 219 (Ch. Div. 1996), to which the parties and the trial court have alluded, and both of which considered and reached arguably different results concerning the effect of a conditional dismissal in a domestic violence action, are inapposite to the question posed here.

[15]See www.judiciary.state.nj.us/family/dvprcman (last visited March 17, 2014).

had long become stale. See, e.g., Orner v. Liu, 419 N.J. Super. 431, 436-37 (App. Div.), certif. denied, 208 N.J. 369 (2011). Although what constitutes a reasonable time to seek relief is dependent on the totality of the circumstances, plaintiff delayed for approximately nine years before filing the motion in question. It cannot be said that plaintiff moved with the alacrity demanded by the remedy sought. We, thus, affirm the motion judge's denial of the motion for relief from the order dismissing the 2002 FRO.[16]

V

The July 16, 2012 order, which involuntarily dismissed the 2012 domestic violence action, is reversed and the matter remanded for a new trial in conformity with this opinion. As a result, the June 27, 2012 temporary restraining order (TRO) is hereby reinstated[17] and shall remain in full force and effect

---

[16]Plaintiff also appeals the motion judge's denial of reconsideration of the trial judge's order of dismissal. In light of our disposition of the other issues, we need not consider this contention, except to note that the motion judge incorrectly concluded that only the trial court could reconsider his order. Despite the difficulty such a circumstance presents for a subsequent judge, the parties were entitled to a ruling on the merits of that motion regardless of the unavailability of the trial judge.

[17]The trial court is granted leave to enter its own order reinstating the TRO and is directed to take all necessary steps to ensure the immediate service of that order on defendant as
(continued)

until the disposition of the new trial we have ordered. The September 24, 2012 order, which denied relief from the order that vacated the 2002 FRO, is affirmed. We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

---

(continued)
well as all appropriate law enforcement personnel, as is the case when an initial TRO is entered.