# RECORD IMPOUNDED

**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-3033-20

E.L.C.,

    Plaintiff-Respondent,

v.

D.M.F.,

    Defendant-Appellant.

_____

        Submitted September 20, 2022 – Decided October 21, 2022

        Before Judges Sumners and Susswein.

        On appeal from the Superior Court of New Jersey, Chancery Division, Family Part, Burlington County, Docket No. FV-03-1688-21.

        D.M.F., appellant pro se.

        Stockton Family Law, LLC, attorneys for respondent (Kathleen Pasquarello Stockton and Jessica A. Beardsley, on the brief).

PER CURIAM

Defendant D.M.F.[1] appeals from the final restraining order (FRO) entered against her on May 27, 2021 pursuant to the Prevention of Domestic Violence Act (PDVA), N.J.S.A. 2C:25-17 to -35. Defendant and plaintiff, E.L.C., are in the midst of a contentious divorce. Judge Eric G. Fikry convened the FRO hearing and rendered a comprehensive oral opinion, finding plaintiff's testimony more credible than defendant's testimony. He concluded that defendant committed the predicate act of harassment by repeatedly appearing at the bus stop across from plaintiff's house to see the children leave for school. These appearances were in defiance of the court order entered in the matrimonial action and despite plaintiff's warning that she would seek a restraining order. Judge Fikry also found that an FRO was necessary after applying the factors set forth in N.J.S.A. 2C:25-29(a)(1) to (6). Defendant raises numerous contentions on appeal. After carefully reviewing the record in light of the applicable legal principles, we affirm.

I.

We briefly summarize the relevant facts elicited at the FRO trial. Plaintiff and defendant were married in 2015. In June 2020, plaintiff filed for divorce. The custody of the children was—and continues to be—hotly disputed.

---

[1] In accordance with Rule 1:38-3(d)(10), we identify the parties by their initials.

Defendant sought "50/50 shared legal, physical, and residential custody." Plaintiff sought "temporar[y] . . . sole legal and physical custody of the . . . children pending further order of the Court."

On March 26, 2021, Judge Edward W. Hoffman entered an order in the matrimonial action ("the March 26 order") granting sole physical custody of the children to plaintiff and prohibiting defendant from "entering the marital home or its surrounding property unless otherwise agreed upon by the parties." That order provided for daily, twenty-minute "phone and/or videocalls" between defendant and the children.

Defendant was vociferously opposed to the March 26 order and expressed in an April 15, 2021 letter to plaintiff's counsel that compliance with it would "enable" "a judge kidnap[ping] [her] children." Defendant added that she "will NEVER be FORCED to do anything that violates [her] basic human rights." The letter advanced similar anti-government sentiments in an attempt to justify defendant's non-compliance with the custody and stay-away provisions of the March 26 order.

Plaintiff testified at the FRO trial that, between 2019 and spring 2020, defendant's behavior became increasingly erratic and that she was "scared" by defendant's behavior. Plaintiff claimed, by way of example, that in February

3

2020, defendant left her job at Wawa and spent three days in her car waiting outside of the Wawa corporate office attempting to speak to the CEO.

In summer 2020, plaintiff unsuccessfully applied for a restraining order because of "[defendant's] manic behavior text messages, just on repeat. Just harassing context and content."

Plaintiff also testified that, in February 2021, defendant threatened to contact plaintiff's employer and make false allegations against plaintiff. Plaintiff testified that she believed defendant's intent was to harass, scare, and intimidate her. Plaintiff asked the judge hearing the divorce action to prohibit defendant from contacting plaintiff's employer. Judge Hoffman granted that request in the March 26 order.

Defendant testified at the FRO trial that she did not threaten to make allegations against plaintiff but rather requested permission to ask plaintiff's employer about existing allegations. Defendant described that request as "lawful discovery" and said that any fear plaintiff had was "subjective."

The basis for plaintiff's harassment allegation was that defendant repeatedly appeared at the bus stop across from plaintiff's house to see the children leave for school. That was despite the court order prohibiting defendant from going near plaintiff's house or having in-person contact with the children.

The appearances also disregarded plaintiff's explicit request that defendant not come to the bus stop and plaintiff's later warning that she planned to seek a temporary restraining order (TRO).

Defendant claimed that plaintiff had invited her to the bus stop. Plaintiff disputed that she had invited defendant, contending that defendant knew when to appear only because the children had told her when they were scheduled to take the bus.

Plaintiff produced an audio recording, date-stamped April 27, of a conversation between defendant and plaintiff in which plaintiff asked defendant not to be at the bus stop and stressed that defendant was not allowed in-person visitation. In that recorded conversation, defendant reiterated that she would not comply with the March 26 order. Defendant acknowledged at trial that the content of the audio recording was authentic but claimed the conversation took place on April 29, not April 27. Defendant also acknowledged at trial that she was at the bus stop on April 26, 27, 28, and 29, but denied being there on April 30. Plaintiff testified that defendant was also there on April 30.

On April 29, plaintiff told defendant via instant message that she would file for a restraining order. Defendant contends that she did not go back to the bus stop after that. However, plaintiff presented a still photo taken by her home

5

security camera, date-stamped April 30, which shows defendant at the bus stop. Defendant acknowledged that she is the person in the photo but contested the legitimacy of the date-stamp.

After hearing the evidence presented by both parties and making credibility findings, Judge Fikry found that plaintiff proved the predicate act of harassment by a preponderance of the evidence. In making that determination, in addition to his witness credibility assessment, he referred to the April 15 letter defendant had sent to plaintiff's counsel, the recorded conversation that the judge found occurred d on April 27, and the photo the court found was taken on April 30. The judge noted that there was no evidence of any manipulation of the date-stamps on either the audio recording or the photo.

Judge Fikry inferred that defendant had a purpose to harass, pointing to defendant's statements indicating "an unwillingness to comply with court orders with which she did not agree." The judge also found that defendant's repeated appearances after the April 27 conversation "can only be inferred as being indicative of defendant's intention to appear in violation of the order and . . . attempt to frustrate the plaintiff and annoy plaintiff." The judge also noted that there was no legitimate purpose for defendant to be at the bus stop, which "supports the finding that there was purpose . . . to harass."

A-3033-20

Having established that plaintiff proved a predicate act of domestic violence, Judge Fikry also made detailed findings in support of his conclusion that the entry of an FRO was necessary. The judge addressed the non-exhaustive list of factors set forth in N.J.S.A. 2C:25-29(a)(1) to (6).

Judge Fikry thereupon issued the FRO, ordered psychiatric and substance abuse evaluations of defendant, and imposed a $100 penalty. The judge acknowledged that the FRO may need to be modified to allow for parenting time depending on the decisions in the divorce action.

Defendant raises the following contentions on appeal for our consideration:

> POINT I
>
> THE TRIAL COURT IMPROPERLY RESTRICTED THE DEFENDANT FROM DUE PROCESS WHEN ADJOURNING THE FINAL HEARING ON MAY 10, 2021, AND WHEN ADJOURNING THE TRO APPEAL ON MAY 12, 2021
>
> POINT II
>
> PERJURED/ STUBBORN PERJURY/ KNOWINGLY FALSIFYING MATERIAL FACTS/ FRAUD UPON THE COURT
>
> POINT III
>
> THE JUDGE FOUND HARASSMENT BUT MISINTERPRETED THE HARASSMENT STATUTE AND ISSUED A FINDING THAT IS

A-3033-20

INCONSISTENT WITH DOMESTIC VIOLENCE LAW IN NJ

POINT IV

THE TRIAL COURT WAS ARBITRARY ALLOWED SUBMISSION OF [sic] THE PLAINTIFF'S EVIDENCE P7 AND P8 AFTER THE DEFENDANT'S TESTIMONY AND A 3 [H]OUR COURT RECESS BUT SIMULTANEOUSLY RESTRICT[ED] THE DEFENDANT FROM ENTERING EVIDENCE SUBMITTED PRIOR TO TRIAL

POINT V

THE TRIAL COURT MADE AN ARBITRARY FINDING THAT EVIDENCE P7 AND P8 WERE SUBMITTED PRIOR TO TRIAL AND PRODUCED DURING REBUTTAL

POINT VI

THE MARCH 26, 2021 FM ORDERS/ RESTRAINTS AND THE MAY 27, 2021 FINAL RESTRAINING ORDER ARE VOID PURSUANT [TO] RULE 4:50

POINT VII

THE TRIAL COURT JUDGE ABUSED HIS DISCRETION WHEN [HE] ARBITRARILY ENTERED A FINAL RESTRAINING [ORDER] AGAINST THE DEFENDANT ABSENT [O]F A HISTORY OF VIOLENCE

POINT VIII

STAY PROCEEDING UNDER THE FM DOCKET PENDING THIS APPEAL

POINT IX

NO BEST INTEREST FINDINGS MADE IN THE FM
DOCKET OR FV DOCKET

II.

We begin our analysis by acknowledging the legal principles governing this appeal. The scope of our review is narrow. Appellate courts "accord substantial deference to Family Part judges, who routinely hear domestic violence cases and are 'specially trained to detect the difference between domestic violence and more ordinary differences that arise between couples.'" C.C. v. J.A.H., 463 N.J. Super. 419, 428 (App. Div. 2020) (quoting J.D. v. M.D.F., 207 N.J. 458, 482 (2011)). Moreover, "[d]eference is especially appropriate 'when the evidence is largely testimonial and involves questions of credibility.'" Cesare v. Cesare, 154 N.J. 394, 412 (1998) (quoting In re Return of Weapons to J.W.D., 149 N.J. 108, 117 (1997)). Accordingly, we will not disturb the factual findings of the trial judge unless they are so "manifestly unsupported by or inconsistent with the competent, relevant and reasonably credible evidence as to offend the interests of justice." C.C., 463 N.J. Super. at 428 (quoting S.D. v. M.J.R., 415 N.J. Super. 417, 429 (App. Div. 2010)).

The PDVA authorizes a court to issue a restraining order "after a finding

. . . is made that an act of domestic violence was committed by that person." N.J.S.A. 2C:25-29(a). An FRO may be issued if two criteria are met. Silver v. Silver, 387 N.J. Super. 112, 125 (App. Div. 2006). The plaintiff seeking the FRO must prove that (1) "one or more of the predicate acts set forth in N.J.S.A. 2C:25-19(a) has occurred," and (2) that the order is necessary to protect plaintiff "from an immediate danger or to prevent further abuse." Id. at 125, 127.

The plaintiff must prove an act of domestic violence by a preponderance of the evidence. S.D., 415 N.J. Super. at 431 (citing N.J.S.A. 2C:25-29(a)). Under the preponderance standard, "a litigant must establish that a desired inference is more probable than not. If the evidence is in equipoise, the burden has not been met." N.J. Div. of Youth & Fam. Servs. v. N.S., 412 N.J. Super. 593, 615 (App. Div. 2010) (quoting Liberty Mut. Ins. Co. v. Land, 186 N.J. 163, 169 (2006)). "The evidence must demonstrate that the offered hypothesis is a rational inference, that it permits the trier[] of fact to arrive at a conclusion grounded in a preponderance of probabilities according to common experience." Ibid. (alteration in original) (quoting In re Estate of Reininger, 388 N.J. Super. 289, 298 (Ch. Div. 2006)).

In Silver, we explained that "the commission of any one of the predicate acts enumerated in [the PDVA] does not automatically warrant issuance of a

domestic violence restraining order." 387 N.J. Super. at 124. In R.G. v. R.G., we reaffirmed that principle, explaining that "the trial court must find a predicate offense and also find a basis, upon the history of the parties' relationship, to conclude the safety of the victim is threatened and a restraining order is necessary to prevent further danger to person or property." 449 N.J. Super. 208, 224 (App. Div. 2017); see also Corrente v. Corrente, 281 N.J. Super. 243, 248 (App. Div. 1995) ("[T]he drafters of the law did not intend that the commission of any one of these acts automatically would warrant the issuance of a domestic violence order.").

The second prong of the two-part Silver test "reflects the reality that domestic violence is ordinarily more than an isolated aberrant act and incorporates the legislative intent to provide a vehicle to protect victims whose safety is threatened. This is the backdrop on which defendant's acts must be evaluated." R.G., 449 N.J. Super. at 229 (quoting Corrente, 281 N.J. Super. at 248).

## III.

We next apply these general principles to the specific contentions that defendant raises on appeal. We first address her contention that the adjournment of the FRO trial violated her due process rights because it caused "an extreme

hardship" by preventing her from "clear[ing] up the matter as quickly as possible."

We discern the following facts and procedural history pertinent to defendant's claim that the delay in convening the FRO trial violated her constitutional rights. On April 30, 2021, plaintiff filed a domestic violence complaint. On that date, Judge Craig A. Ambrose issued a TRO against defendant. The local police department served defendant with the TRO on May 7, 2021.

The initial hearing was convened on May 10, 2021 before Judge James J. Morley. He explained the FRO trial process to the litigants. He also determined that the "volume of cases" made it "impossible" to have a full trial that day. He re-scheduled the FRO hearing for May 24, 2021 before Judge Fikry.

On May 12, 2021, Judge Ambrose convened a hearing to consider defendant's application for an emergent appeal of the TRO. Judge Ambrose did not reach the merits of defendant's appeal at that hearing, however, because plaintiff's counsel had not received defendant's application. Judge Ambrose nonetheless ordered an amendment to the TRO to allow defendant to have contact via Zoom with the two children in plaintiff's custody, as was allowed by the March 26 order.

A-3033-20

Judge Fikry convened the FRO trial on May 24, 2021. On May 27, he reconvened the parties and rendered his decision on the record.

N.J.S.A. 2C:25-29(a) provides in pertinent part that "[a] hearing shall be held in the Family Part of the Chancery Division of the Superior Court within 10 days of the filing of a [domestic violence] complaint." The New Jersey Domestic Violence Procedures Manual (2022)[2] explains that "[t]he court may grant an adjournment for . . . good cause, unless the delay would create an extreme hardship on the other party." Id. at 52. Decisions to adjourn a hearing are reviewed "under an abuse of discretion standard." Escobar-Barrera v. Kissin, 464 N.J. Super. 224, 233 (App. Div. 2020) (quoting State ex rel. Comm'r of Transp. v. Shalom Money St., LLC, 432 N.J. Super. 1, 7 (App. Div. 2013)). In Crespo v. Crespo, the FRO trial did not commence until twenty-three days after the domestic violence complaint was filed, and the trial was completed thirty-six days after the action was commenced. 408 N.J. Super. 25, 44 (App. Div. 2009). On those facts, we found no due process violation. Id. at 43–44.

Importantly, defendant in the matter before us has not established that she was precluded from presenting any evidence or making any argument by reason

---

[2]    Issued under the authority of the Supreme Court of New Jersey and the New Jersey Attorney General, found at: https://www.njcourts.gov/courts/assets/family/dvprcman.pdf?c=Bhe

of the twenty-four-day delay between the filing of the TRO complaint and the FRO trial. Defendant was permitted to cross-examine plaintiff, present her own testimony, and make a closing argument. Defendant has thus failed to show that she suffered any prejudice, much less an extreme hardship.

IV.

We next address defendant's contention that plaintiff and her counsel committed fraud upon the court and "tainted" the "judicial machinery" by misrepresenting the contents of the March 26 order. We disagree. At most, the "fraud" defendant alleges is a difference of opinion as to the interpretation of the March 26 order.

Fraud on the court is found where "it can be demonstrated, clearly and convincingly, that a party has sentiently set in motion some unconscionable scheme calculated to interfere with the judicial system's ability impartially to adjudicate a matter by improperly influencing the trier or unfairly hampering the presentation of the opposing party's claim or defense." Triffin v. Automatic Data Processing, Inc., 394 N.J. Super. 237, 251 (App. Div. 2007) (quoting Aoude v. Mobil Oil Corp., 892 F.2d 1115, 1118 (1st Cir. 1989)).

The "scheme" that defendant alleges is that plaintiff and her counsel falsely claimed that the March 26 order stated that a restraining order could be

14 <span>A-3033-20</span>

issued if defendant's "behavior continued to escalate." Defendant further claims that, as part of this alleged scheme, plaintiff purposely omitted from the TRO application that defendant was permitted to enter the marital property under the March 26 order "if it was agreed upon." Finally, defendant claims plaintiff "ha[d] full knowledge" that defendant did not threaten to contact plaintiff's employer.

We discern no fraud upon the court but rather a dispute as to the relevant facts. That dispute was resolved by Judge Fikry who found that plaintiff's testimony was more credible than defendant's testimony. Given the deferential standard of review, we decline to substitute our judgment for that of the trial court. See C.C., 463 N.J. Super. at 428. We add that the March 26 order is part of the record and speaks for itself. Plaintiff's interpretation of the order did not "improperly influenc[e] the trier or unfairly hamper[] the presentation of the opposing party's claim or defense" as to constitute a fraud on the court. Triffin, 394 N.J. Super. at 251.

V.

Defendant next challenges Judge Fikry's interpretation of the harassment statute and his finding that defendant had the requisite purpose to harass. We conclude Judge Fikry's finding that defendant went to the school bus stop near

plaintiff's home with the purpose to seriously annoy plaintiff was not "manifestly unsupported by or inconsistent with the competent, relevant and reasonable credible evidence as to offend the interests of justice." C.C., 463 N.J. Super. at 428. Applying the deferential standard of review that governs this appeal, we are satisfied that there is sufficient evidence in the trial record from which the trial judge could reasonably infer that defendant visited the bus stop with the purpose to alarm or seriously annoy plaintiff. We therefore decline to substitute our judgment for Judge Fikry's findings.

The domestic violence predicate act of harassment is committed "if, with purpose to harass another," the defendant:

> a. Makes, or causes to be made, a communication or communications anonymously or at extremely inconvenient hours, or in offensively coarse language, or any other manner likely to cause annoyance or alarm;
>
> b. Subjects another to striking, kicking, shoving, or other offensive touching, or threatens to do so; or
>
> c. Engages in any other course of alarming conduct or of repeatedly committed acts with purpose to alarm or seriously annoy such other person.
>
> [N.J.S.A. 2C:33-4(a) to (c).]

In Corrente, we held that "[i]ntegral to a finding of harassment . . . is the establishment of the purpose to harass." 281 N.J. Super. at 249 (first citing D.C.

16

v. T.H., 269 N.J. Super. 458, 461–62 (App. Div. 1994); and then citing E.K. v. G.K., 241 N.J. Super. 567, 570 (App. Div. 1990)). "A person acts purposely with respect to the nature of his [or her] conduct or a result thereof if it is his [or her] conscious object to engage in conduct of that nature or to cause such a result." State v. Hoffman, 149 N.J. 564, 577 (1997) (quoting N.J.S.A. 2C:2-2(b)(1)). Thus, to find harassment, there must be proof that a defendant's conscious object was to "harass," that is, "annoy," "torment," "wear out," and "exhaust." State v. Castagna, 387 N.J. Super. 598, 606, 607 (App. Div. 2006) (quoting Webster's II New College Dictionary 504 (1st ed. 1995)).

Purpose is a state of mind that cannot be seen or felt by another. Absent an admission, a person's purpose must be adduced inferentially from his or her conduct and the surrounding circumstances. Our Supreme Court has made clear that a trial judge may use common sense and experience to infer from the evidence presented a defendant's intent to harass. H.E.S. v. J.C.S., 175 N.J. 309, 327 (2003) ("'A finding of a purpose to harass may be inferred from the evidence presented' and from common sense and experience." (quoting Hoffman, 149 N.J. at 577)).

In Hoffman, the defendant sent the plaintiff torn-up copies of a support order. 149 N.J. at 577. The trial court found there was "no legitimate purpose"

17

to send the document in that mutilated condition.  Ibid.  Our Supreme Court held that, in the absence of any legitimate purpose for the defendant's conduct, the trial court could reasonably infer the defendant acted with the purpose to harass. Ibid.

In the matter before us, the trial judge similarly noted that there was no legitimate purpose for defendant to be at the bus stop, which, the judge reasoned, "supports the finding that there was purpose . . . to harass."  Defendant argued at trial and again on appeal that her purpose for going to the bus stop was to see the children, not to annoy or otherwise harass plaintiff.

We agree with Judge Fikry that, because the March 26 order prevented defendant from having in-person contact with the children, she had no "legitimate" purpose for being at the bus stop.  We acknowledge, however, that the present situation is distinguishable from Hoffman.  In that case, the Court essentially concluded the trial court could reasonably infer the only purpose that could be inferred by mailing a torn-up copy of the support order was to harass. Hoffman, 149 N.J. at 577.  In the matter before us, we believe a trial court could reasonably infer that defendant had a purpose to harass even if she also had a desire to see the children.

In any event, the record clearly shows that Judge Fikry's fact-sensitive finding with respect to defendant's purpose was not based entirely on the ground that she had no legitimate basis to go the bus stop.  Specifically, Judge Fikry explained:

> With respect [to] finding that the defendant acted with purpose to harass, the [c]ourt takes note of the defendant's own statements, both in the April 15 letter to counsel as well as in the recording on April 27[] which the defendant indicated an unwillingness to comply with court orders with which she did not agree. And the continued appearance at the bus stop subsequent to April 27 . . . can only be inferred as being indicative of defendant's intention to appear in violation of the order and in . . . [an] attempt to frustrate . . . plaintiff and annoy plaintiff who had already told her that she did not wish for her to be there, that she did not have authorization to be there.  And . . . accordingly that she was going to be pursuing a restraining order, which is in fact what happened.

Defendant argues that, in inferring she had a purpose to harass, Judge Fikry put undue weight on her violation of, and comments disparaging, the March 26 order.  Defendant acknowledges that she knowingly violated the March 26 order but asserts the proper response to her violation would be an enforcement of litigant's rights under Rule 1:10-3 or Rule 5:3-7, not an FRO.[3]

---

[3] Rule 1:10-3 and Rule 5:3-7 do not provide for exclusive remedies.  Indeed, in N.B. v. S.K., this court allowed a plaintiff to seek a restraining order despite the existence of matrimonial restraints.  435 N.J. Super. 298, 300 (App. Div. 2014).

The New Jersey Code of Criminal Justice, of which the PDVA is a part, distinguishes between the purposeful and knowing culpable mental states, see N.J.S.A. 2C:2-2(b)(1) and (2). We are satisfied, however, that defendant's acknowledgement that she knowingly violated the March 26 order in no way precludes a finding that she also acted with a purpose to alarm or seriously annoy plaintiff. After carefully reviewing the entire record, we see no basis upon which to overturn the trial court's inferential finding that defendant acted with the requisite purpose to establish the predicate act of harassment.

In reaching this conclusion, we first consider when and in what circumstances a purpose to harass can be inferred from the prior history of defendant's interactions with plaintiff. In J.D., the New Jersey Supreme Court cautioned that "[a]lthough a purpose to harass can be inferred from a history between the parties that finding must be supported by some evidence that the actor's conscious object was to alarm or annoy; mere awareness that someone might be alarmed or annoyed is insufficient." 207 N.J. at 487 (citations omitted).

In that case, a man took pictures of his former partner's home in the early hours of the morning using flash photography. Id. at 466. He claimed that he was attempting to gather evidence of his ex-partner's co-habitation with another

man to help him in a custody action. Id. at 469. The trial court considered prior non-violent but "hardly praiseworthy" interactions between the parties as evidence of the defendant's improper purpose. Id. at 486–87. The Court concluded that the trial court did not sufficiently connect the past behavior with a purpose to harass when taking the photographs and remanded to permit further inquiry into the defendant's purpose. Id. at 487–88.

The Court admonished that, when evaluating purpose, "our courts must be especially vigilant in cases involving, as do many domestic violence disputes, the interactions of a couple in the midst of a breakup of a relationship." Id. at 487. The Court further cautioned "against 'overextending a criminal statute to rude behavior which is not directed to anyone specifically but only towards an institution in general.'" Id. at 483 (quoting State v. Duncan, 376 N.J. Super. 253, 263–64 (App. Div. 2005)). The Court added that in Duncan, we held that "venting of frustration or irritation" "did not demonstrate a purpose to harass, thus making a restraining order inappropriate." J.D., 207 N.J. at 483 (quoting Duncan, 376 N.J. Super. at 262–64).

Our decision in N.B. v. S.K. provides further guidance with respect to whether and in what circumstances a willful violation of a matrimonial order evinces a purpose to harass. 435 N.J. Super. 298 (App. Div. 2014). In that case,

as part of their divorce settlement, the parties replaced their mutual FROs with consensual civil restraints.  Id. at 301.  S.K. thereafter left a series of offensive voice messages for his former partner, N.B., in violation of the restraints.  Id. at 301–02.  N.B. then applied for a new FRO, id. at 302, and sought to use the violation of the matrimonial order "as a means of demonstrating how alarming or annoying these telephone calls were to her,"  Id. at 306.  We concluded that, while the violations of the civil restraints were not "per se 'acts of domestic violence,'"[4] those violations of the matrimonial order "support the claim" that S.K. acted "with purpose to alarm or seriously annoy."  Id. at 308.

Applying the foregoing legal principles to the matter before us, we conclude that violation of the March 26 order is a relevant consideration in inferring defendant's purpose.  Accordingly, the Judge Fikry did not abuse his discretion by taking into account the circumstances of the violation of the matrimonial order.  Given the narrow scope of our review, moreover, we are not prepared to rule that the Judge Fikry placed "undue weight" on this

---

[4] We note that contempt of a domestic violence order issued pursuant to N.J.S.A. 2C:29-9—as distinct from violation of a matrimonial order—constitutes a distinct predicate act under the PDVA.  See N.J.S.A. 2C:25-19(a)(17).  Had the stay-away provision of the March 26 order been issued as part of a domestic violence TRO, an FRO could have been entered based on a finding of the predicate act of contempt, which does not require proof of a purpose to harass.

A-3033-20

circumstance. The weight to be accorded relevant evidence is a matter reserved to the fact-finding discretion of a Family Part judge. See N.J. Div. of Youth & Fam. Servs. v. I.Y.A., 400 N.J. Super 77, 89 (App. Div. 2008).

Furthermore, the record makes clear that Judge Fikry did not rely entirely on the violation of the March 26 order to infer defendant's purpose to harass; he also found that defendant went to the bus stop after plaintiff had expressed her opposition to that behavior and her intention to seek a TRO.[5]

Our decision in R.G., provides helpful guidance on this point. In R.G., two adult brothers were engaged in a heated dispute over the provision of care to their parents. 449 N.J. Super. at 214–17. During that dispute, one of the brothers sent several rude text messages to his sibling. Id. at 217. We concluded that the trial judge in that case "made no findings to support a purpose to harass." Id. at 227. Importantly, we found "[o]ther indicia that might circumstantially prove such a purpose, such as plaintiff telling defendant to stop his texts, is also absent." Ibid.

---

[5] As we explain in section VI of this opinion, we defer to Judge Fikry's finding that there was no evidence that the date-stamps on the audio recording or photograph were tampered with. See infra section VI. We thus accept his finding that defendant appeared at the bus stop after plaintiff had threatened to seek a TRO if defendant repeated a violation of the March 26 stayaway order.

A-3033-20

In the matter before us, plaintiff alleged—and Judge Fikry found—that defendant returned to the bus stop after plaintiff had told defendant to stop appearing there. That is exactly the type of "indicia that might circumstantially prove [an improper] purpose" that we recognized in R.G. Ibid.

As noted above, in J.D., the Supreme Court cautioned that mere awareness that someone might be alarmed or annoyed is insufficient. 207 N.J. at 487. We nonetheless believe the recorded conversation and instant messages between plaintiff and defendant put defendant on clear notice that plaintiff would seek a TRO if defendant returned to the bus stop. Indeed, defendant does not dispute that point but rather argues that she heeded plaintiff's threat to apply for a TRO and did not return to the bus stop after the message on the 29th. Judge Fikry rejected defendant's version of events and found that defendant returned to the bus stop after that warning.[6]

In these circumstances, it was reasonable—and certainly not an abuse of discretion—for the trial judge to infer that defendant returned to the bus stop with purpose to alarm or seriously annoy plaintiff and not just an awareness that plaintiff would be alarmed or seriously annoyed. Accordingly, we find no abuse

---

[6] We address defendant's challenge to that finding in section VI of this opinion.

of discretion in Judge Fikry's determination that defendant committed the predicate of harassment.  See C.C., 463 N.J. Super. at 428.

VI.

We turn next to defendant's contentions that the trial court erred in admitting two trial exhibits plaintiff presented: a screenshot of the date-stamp purportedly showing the audio recording was made on April 27 (P-8) and the home security camera image purportedly taken on April 30 (P-7).  Together, these trial exhibits support plaintiff's allegation that defendant repeatedly went to the school bus stop after plaintiff told her that she was not welcome there and that defendant appeared even after plaintiff warned her about the restraining order.

We reiterate that the scope of our review is narrow.  A trial judge's "decision to admit or exclude evidence is 'entitled to deference absent a showing of an abuse of discretion, i.e., [that] there has been a clear error of judgment.'" State v. Brown, 463 N.J. Super. 33, 51 (App. Div. 2020) (alteration in original) (quoting Griffin v. City of E. Orange, 225 N.J. 400, 413 (2016)).  Evidentiary decisions are only reversed if they are "so wide [of] the mark that a manifest denial of justice resulted." Brown, 463 N.J. Super. at 51 (alteration in original) (quoting State v. Cope, 224 N.J. 530, 554–55 (2016)).  Furthermore, evidence

25

relevant to the issue of credibility is admissible to rebut a witness's testimony. N.J.R.E. 607(a). Applying these principles, we see no abuse of discretion in Judge Fikry's ruling to admit P-7 and P-8 to show that defendant went back to the bus stop after the recorded conversation, thereby discrediting defendant's version of events.

The gravamen of defendant's claim is that Judge Fikry erred in finding that the date-stamps had not been manipulated. More specifically, defendant contends that Judge Fikry erred in reasoning that there was no opportunity to manipulate the date-stamps because the exhibits "were submitted prior to the hearing." Defendant contends the judge found so despite the exhibits actually being submitted during the hearing. Defendant alleges that the judge intentionally misrepresented when P-7 and P-8 were submitted "in order to fortify his punitive/illegal rulings."

Defendant's theory of judicial misconduct is belied by a careful reading of the trial record. In the portion of his comprehensive oral decision regarding the alleged tampering of the date-stamps, Judge Fikry explained:

> In fact to the contrary, as I understand it or as I recall . . . the evidence, . . . P-7 and P-8[,] which were introduced for purposes of simply . . . confirming the dates and times of the defendant's appearance at the bus stop on the 30th as well as the verification of the recording that occurred on April 27[]. Those items

26

were produced during rebuttal testimony[.] . . . [P]rior to the hearing it . . . did not appear that . . . was in contention. And so . . . the [c]ourt . . . suggest that those items that were introduced looked like -- how those items existed at the time of the hearing, and that there was not an opportunity to manipulate . . . that data prior to its submission.

A close reading of that passage—viewed in context with the trial transcript of the court's evidentiary ruling—shows the judge's reference to "prior to the hearing" was not about when the evidence was submitted, but rather when it was first learned that defendant was contesting the dates on which the recording and image were created. As Judge Fikry aptly noted, the date of the recorded conversation and the date of defendant's final appearance at the bus stop were not at issue until after defendant testified and claimed that she had not gone to the bus stop after plaintiff threatened to seek a TRO. Thus, Judge Fikry reasoned there would have been no incentive for plaintiff to manipulate the date-stamps prior to the trial. In sum, defendant's allegation that the judge intentionally misrepresented when P-7 and P-8 were submitted "in order to fortify his punitive/illegal ruling" is meritless.

Defendant's related contention that the trial court failed to consider her objections to P-7 and P-8 is likewise belied by the record. During the trial, Judge Fikry stated, "I do understand that there's an objection that has been raised

27

with respect to dates that are identified on those electronically created documents. However, I don't think that that precludes i[t] from being admitted into evidence." Furthermore, in his final decision, Judge Fikry again referenced defendant's contentions regarding the date-stamps and nonetheless ruled that plaintiff had carried the burden of proof. The failure to agree with an objection is not a failure to consider it.

Finally, we likewise reject defendant's contention that Judge Fikry improperly "restricted her from entering evidence." Presumably, she is referring to evidence she attempted to admit to show that plaintiff had invited her to the home on March 2 and 10. Judge Fikry determined that evidence was irrelevant to the question of whether, as defendant claims, plaintiff invited defendant to come to the school bus stop in late April. We reiterate that we apply a deferential standard of review of evidential rulings, including whether proffered evidence is relevant. See N.J.R.E. 401; cf. Brown, 463 N.J. Super. at 51 ("Although a trial court retains broad discretion in determining the admissibility of evidence, that discretion is abused when relevant evidence offered by the defense and necessary for a fair trial is kept from the jury." (quoting Cope, 224 N.J. at 554–55)).

28

In this instance, we see no abuse of discretion. But even assuming for the sake of argument that testimony concerning earlier invitations to visit plaintiff's home should have been admitted, the exclusion of that evidence was not "so wide [of] the mark that a manifest denial of justice resulted.'" Ibid. (alteration in original). Indeed, that evidence might only have shown a deterioration in the relationship between the parties that bolsters, not undermines, Judge Fikry's finding that defendant committed the predicate act of harassment.

## VII.

Defendant's contention that Judge Hoffman had no jurisdictional authority to issue the March 26 order is devoid of merit. N.J.S.A. 2A:34-8 provides jurisdiction to the Superior Court in divorce cases "when either party is a bona fide resident of this State." Regarding the temporary custody determination, N.J.S.A. 9:2-3 provides, "[u]ntil the court determines the final custody of the minor child and unless the parties agree otherwise, the court shall determine temporary custody based upon the best interests of the child with due regard to the caretaking arrangement that previously existed." Regarding the order to keep away from the marital property, Rule 5:7-2(b) allows the court to provide

pendente lite relief "by way of a preliminary restraint."[7] Accordingly, we hold the March 26 order was valid and was properly considered in this domestic violence matter.

## VIII.

Defendant next challenges Judge Fikry's factual findings regarding the history of domestic violence between the parties. N.J.S.A. 2C:25-29(a)(1) provides that the court in determining whether to enter a domestic violence FRO must consider "[t]he previous history of domestic violence between the plaintiff and defendant, including threats, harassment and physical abuse." In Cesare, our Supreme Court stressed that when evaluating the necessity of an FRO, the issuing court, "must at least consider" the parties' history of domestic violence. 154 N.J. at 402 (emphasis omitted). The Court nonetheless emphasized that "a court is not obligated to find a past history of abuse before determining that an

---

[7] We note that, although the relief authorized by Rule 5:7-2(b) has been largely replaced by restraining orders issued pursuant to the PDVA, see Louis & Seiden, New Jersey Family Law: Divorce, Alimony & Property Division § 14:5-1 (2021), a court's authority under that rule has not been removed. Furthermore, we have upheld restrictions on access to the marital home under a Family Part court's statutory power to "make such order . . . as to the care, custody, education and maintenance of the children, or of any of them, as the circumstances of the parties and the nature of the case shall render fit, reasonable and just." N.J.S.A. 2A:34-23; Burger v. Burger, 6 N.J. Super. 52, 54 (App. Div. 1949); Degenaars v. Degenaars, 186 N.J. Super. 233, 235 (Ch. Div. 1982).

act of domestic violence has been committed in a particular situation." Ibid. We reiterate and stress, moreover, that a trial judge's factual findings in a FRO case will only be disturbed if "they are so manifestly unsupported by or inconsistent with the competent, relevant and reasonably credible evidence as to offend the interests of justice." C.C., 463 N.J. Super. at 428.

In this instance, Judge Fikry found that:

> In this particular case it does appear that . . . defendant has engaged in a pattern of behavior that suggests an unwillingness to comply with court orders and while . . . taking into consideration a history of domestic violence that is described in the plaintiff's testimony and as reflected in the temporary restraining order the [c]ourt does find that there's an appropriate basis for imposition [of] a final restraining order and that this factor -- in favor of entry of a final restraining order.

We see no abuse of discretion in Judge Fikry's ruling. Plaintiff testified to at least two separate and distinct events that occurred before the episodes at the bus stop that could reasonably be construed as "threats" or "harassment" for purposes of considering a history of domestic violence pursuant to N.J.S.A. 2C:25-29(a)(1). First, in summer 2020, defendant sent plaintiff "manic" text messages "on repeat." That occurred after defendant exhibited behavioral changes that "scared" plaintiff. The texts troubled plaintiff enough to prompt her to apply for a restraining order, although it was not granted.

31

Second, plaintiff testified that defendant had threatened to make false allegations to her employer during the custody battle. That too prompted legal action, with plaintiff obtaining a provision in the March 26 order that prohibited defendant contacting plaintiff's employer.

The gravamen of defendant's challenge to Judge Fikry's consideration of those prior incidents is that plaintiff made false allegations with respect to those episodes. As we have stated repeatedly, Judge Fikry heard the testimony of both parties and found plaintiff's testimony with respect to those prior episodes to be more credible. As our Supreme Court recently reaffirmed, "in an appeal, we defer to findings that are supported in the record and find roots in credibility assessments by the trial court." State v. Camey, 239 N.J. 282, 306 (2019) (citing State v. Locurto, 157 N.J. 463, 471–72 (1999)).

IX.

Defendant requests that we stay the divorce action pending this appeal, arguing that, otherwise, she "will be forced to go to trial before an exceptionally biased [j]udge." This request is procedurally deficient, and we decline to entertain it. For one thing, so far as we are aware, defendant did not file a motion for a stay in the Appellate Division. We add that this opinion resolves defendant's appeal. Her appeal, in other words, is no longer pending before us

32

as of the issuance of this opinion, rendering her request moot. Furthermore, Rule 2:9-5(b) makes clear that before seeking a stay from the Appellate Division, a litigant must seek the same relief from the relevant trial court. So far as the record before us shows, that has not happened. Finally, we note in the interest of completeness that to obtain a stay, the requesting party must demonstrate that:

> (1) relief is needed to prevent irreparable harm; (2) the applicant's claim rests on settled law and has a reasonable probability of succeeding on the merits; and (3) balancing the "relative hardship to the parties reveals that greater harm would occur if a stay is not granted than if it were."
>
> [State v. Robertson, 228 N.J. 138, 149 (2017) (quoting Garden State Equal. v. Dow, 216 N.J. 314, 320 (2013)).]

Even assuming for the sake of argument that her application to delay the divorce proceeding were properly before us, defendant fails to satisfy any of the three factors for granting a stay. Ibid.

## X.

Finally, we address defendant's contention that "the court did not consider the best interest of the child[ren]," as required by N.J.S.A. 2C:25-29(a)(4). That claim is belied by the record. In his oral opinion, Judge Fikry discussed "[f]actor number four the best interest of the victim and the child" and found, "the

recording of the [April 27] conversation reflected that this was causing confusion among . . . the children." For that reason, he concluded this statutory factor weighed in favor of granting the FRO.

Defendant refutes that finding, citing her own testimony from the FRO trial about the children being "placed in special education, given their display of emotional distress." She claims that distress was caused by her "absence in [their] lives." Defendant also challenges plaintiff's fitness as a parent by pointing to the "malicious[]" legal action that plaintiff has taken against her.

We reiterate yet again that we afford "substantial deference" to the factual findings of "Family Part judges, who routinely hear domestic violence cases." C.C., 463 N.J. Super. at 428. Both parties testified as to what they believed was best for the children. After hearing all the evidence presented, Judge Fikry found that the FRO was in the children's best interest. Additionally, he noted that the FRO may be modified to allow for any visitation granted in the divorce action. Defendant's renewed contentions do not establish that the trial judge's findings were so incorrect as to offend the interests of justice. S.D., 415 N.J. Super. at 429.

To the extent we have not addressed them, any remaining contentions raised by defendant lack sufficient merit to warrant discussion. R. 2:11-3(e)(1)(E).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-3033-20