# RECORD IMPOUNDED

**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-1699-23

E.D.,[1]

    Plaintiff-Respondent,

v.

D.S.,

    Defendant-Appellant.

_____

        Submitted November 19, 2024 – Decided December 4, 2024

        Before Judges Susswein and Perez Friscia.

        On appeal from the Superior Court of New Jersey, Chancery Division, Family Part, Burlington County, Docket No. FV-03-0806-24.

        Law Office of Louis Guzzo, attorneys for appellant (Eric R. Foley, of counsel and on the brief).

        Respondent has not filed a brief.

PER CURIAM

---

[1] We use initials to protect the confidentiality of the victim in these proceedings. R. 1:38-3(d)(10).

Defendant D.S. appeals from the January 29, 2024 final restraining order (FRO) entered against him under the Prevention of Domestic Violence Act (PDVA), N.J.S.A. 2C:25-17 to -35. Defendant argues the Family Part judge failed to afford him due process and erred in considering inadmissible evidence. Having reviewed the record and applicable legal principles, we affirm.

I.

Plaintiff E.D. and defendant dated for approximately nine years. On October 30, 2023, plaintiff obtained a temporary restraining order (TRO) after filing a domestic violence complaint, alleging defendant committed the predicate acts of harassment and stalking. On November 15, plaintiff obtained an amended TRO. Plaintiff alleged a course of alarming conduct between October 3 and October 30, and a prior history of domestic violence between October 2022 and September 2023.

At the FRO hearing plaintiff was self-represented, and defendant appeared with counsel. The judge provided preliminary instructions and asked plaintiff to identify "any evidence" she intended to introduce. Plaintiff advised she had text messages and pictures.

Plaintiff testified the parties had a long-term dating relationship and resided together for about one year between 2018 and 2019. The parties had

A-1699-23

known each other for about thirty years. Their dating relationship had ended in May 2022, but they later reconciled in February and dated for a few months until May 2023.

Plaintiff relayed that in October, she discovered nails in her driveway. She also discovered nails in her backyard and at her work. Plaintiff took "a couple of pictures" of the nails in her driveway on October 30, which she introduced during the hearing. The judge required plaintiff to "show" the pictures to "defendant for a moment." Plaintiff then provided counsel two photos, stating that "[t]hey[ a]re your copies." The judge marked the photos as P-1 and P-2 and questioned plaintiff about the pictures' accuracy. Plaintiff testified she found nails for "a year-and-a-half," but "they stopped when [the parties] started dating again, and then they reappear[ed]." Plaintiff relayed that after reconciling with defendant in February, she asked him about the nails, and he "laughed about it."

Throughout the trial, the judge asked plaintiff questions that redirected her to address incidents contained "[i]n the complaint." Plaintiff testified to receiving "unwanted phone calls." Defense counsel objected multiple times to plaintiff's testimony as outside of what was specifically "contained in the complaint." He also objected because plaintiff had not "testified [to] when" the

3

calls occurred. The judge permitted plaintiff to refresh her recollection with the TRO regarding the exact incident dates. Plaintiff stated she received three hundred phone calls from a blocked phone number in one day.

Plaintiff at one point inquired, "if you would like, we can reschedule this and I can bring" in the witnesses. She relayed her "neighbors" and her "daughter were [in court] at previous times" but were unable to come that day. Plaintiff produced a "packet with . . . exhibits," including text messages she wished the judge to consider. The judge recessed to examine the exhibits and determine what was "admissible." On the record, the judge explained she examined the exhibits and explicitly stated she would not consider inadmissible documents. The judge attempted to question plaintiff about identifying the text messages in the context of the claims in her TRO, but defense counsel repeatedly objected before plaintiff could respond. The judge explained to plaintiff she would not adjourn the trial for plaintiff to amend her TRO again, as plaintiff admitted the messages were from "anonymous numbers," and defendant was not identified. The judge further explained to plaintiff that "given the circumstances of how the [text messages] were received," it would be "futile" to provide "the opportunity to amend the complaint." She found defense counsel was correct that plaintiff could not "testify to text messages if they[ we]re not [i]n [her] complaint."

A-1699-23

Plaintiff testified that on October 2, defendant followed her home from work on his motorcycle. The judge asked plaintiff to explain what she "observe[d]." Plaintiff answered, "[H]e was coming up on the [driver's] side of [her vehicle] and talking to [her]" at each red light. She recalled telling him to "leave [her] alone." Plaintiff stated defendant followed her home and sat in the front of her home "for a while," and she later observed him on the road behind her house when she was cutting her grass in the back of her property. Plaintiff further testified defendant again followed her to her house on October 3. She clarified defendant followed her on October 2 and 3. She introduced at trial a picture of defendant at her home taken from her "motion detector" camera, which the judge marked as P-3.

Plaintiff expressed that defendant following her home "shocked" her. She had "blocked" defendant's phone number and had told him several times she did not want to hear from him. Plaintiff relayed she "want[ed] to be left alone."

Regarding a prior history of domestic violence, plaintiff testified that in September, her parked vehicle was shot on two separate occasions with a BB gun. The first incident occurred at her work and resulted in the BB pellet shattering her vehicle's back window. While at her daughter's workplace, plaintiff again discovered BB pellet marks on her vehicle's windshield and side.

5

On the next trial date, defense counsel asked defendant only one question on direct examination regarding whether he placed nails near plaintiff's property. Defendant testified he never threw nails on her property. During summation, defense counsel argued the photographs—P-1 through P-3—were not in evidence, which the judge disputed as she recollected the photos were marked and moved into evidence. The judge indicated if the nail and "motion detector" photos were not formally moved into evidence, she was accepting the exhibits in evidence because plaintiff was self-represented and had introduced them with that intention. At the beginning of plaintiff's summation, the judge directed her to address why she was seeking a restraining order. Plaintiff relayed despite asking defendant multiple times, "he never left me alone."

On January 29, 2024, the judge issued an FRO accompanied by an oral decision. She noted defense counsel declined the opportunity to be heard on the admissibility of evidence "with respect to P-1, P-2, and P-3." The judge found plaintiff met her burden of proof by a preponderance of the evidence, establishing the predicate act of harassment under N.J.S.A. 2C:33-4(c), as defendant had followed her home on two occasions. Further, the judge found that on October 2, 2023, after defendant followed plaintiff home, she later witnessed him near the back of her residence. The photograph taken of

6

defendant on his motorcycle at her residence corroborated her account. Further, the judge found defendant committed harassment with "the purpose to engage in a course of conduct to seriously annoy, meaning to weary or to trouble" plaintiff because he followed her two days in a row after she advised him to leave her alone. Additionally, she determined plaintiff established a need for protection because defendant ignored her numerous requests to be left alone. The judge also concluded defendant more likely than not was the cause of the nail incidents but determined plaintiff had already proved harassment. Regarding the alleged predicate act of stalking, the judge found plaintiff failed to meet her burden of proof of showing a reasonable person would "fear for their safety or other emotional distress."

On appeal, defendant raises the following contentions: he was denied due process because the judge acted as plaintiff's counsel during the FRO hearing; and the judge committed reversible error considering documents not moved into evidence.

II.

"We accord substantial deference to Family Part judges, who routinely hear domestic violence cases." C.C. v. J.A.H., 463 N.J. Super. 419, 428 (App. Div. 2020). When reviewing "a trial court's order entered following [a] trial in

A-1699-23

a domestic violence matter, we grant substantial deference to the trial court's findings of fact and the legal conclusions based upon those findings." J.D. v. A.M.W., 475 N.J. Super. 306, 312-13 (App. Div. 2023) (quoting N.T.B. v. D.D.B., 442 N.J. Super. 205, 215 (App. Div. 2015)). We do "not disturb the factual findings and legal conclusions of the trial judge unless [we are] convinced that they are so manifestly unsupported by or inconsistent with the competent, relevant and reasonably credible evidence as to offend the interests of justice." C.C., 463 N.J. Super. at 428 (alteration in original) (quoting S.D. v. M.J.R., 415 N.J. Super. 417, 429 (App. Div. 2010)) (internal quotation marks omitted).

Deference is particularly appropriate when, as here, the evidence is largely testimonial and involves credibility issues, because the judge who observed the witnesses and heard the testimony has a perspective the reviewing court does not enjoy. See Pascale v. Pascale, 113 N.J. 20, 33 (1988) (quoting Gallo v. Gallo, 66 N.J. Super. 1, 5 (App. Div. 1961)); see also D.M.R. v. M.K.G., 467 N.J. Super. 308, 323 (App. Div. 2021) ("Since this case turned almost exclusively on the testimony of the witnesses, we defer to the Family Part judge's credibility findings, as he had the opportunity to listen to the witnesses

and observe their demeanor."). We nonetheless review de novo a trial judge's legal conclusions. C.C., 463 N.J. Super. at 429.

It is well-recognized the New Jersey Legislature enacted the PDVA "to assure the victims of domestic violence the maximum protection from abuse the law can provide." N.J.S.A. 2C:25-18. The PDVA defines a "[v]ictim of domestic violence" as "any person who has been subjected to domestic violence by a person with whom the victim has had a dating relationship." N.J.S.A. 2C:25-19(d).

The entry of an FRO under the PDVA requires the trial judge to make certain findings pursuant to a two-step analysis delineated in Silver v. Silver, 387 N.J. Super. 112, 125-27 (App. Div. 2006). Initially, "the judge must determine whether the plaintiff has proven, by a preponderance of the credible evidence, that one or more of the predicate acts set forth in N.J.S.A. 2C:25-19(a) has occurred." Id. at 125 (citing N.J.S.A. 2C:25-29(a)). The judge is also required to consider "any past history of abuse by a defendant as part of a plaintiff's individual circumstances and, in turn, factor that history into [his or her] reasonable person determination." J.D., 475 N.J. Super. at 314 (quoting Cesare v. Cesare, 154 N.J. 394, 403 (1998)). "'A single act can constitute domestic violence for the purpose of the issuance of an FRO,' even without a

9

history of domestic violence." C.C., 463 N.J. Super. at 434-35 (quoting McGowan v. O'Rourke, 391 N.J. Super. 502, 506 (App. Div. 2007)). If the judge finds defendant committed a predicate act of domestic violence, then the second inquiry "is whether the [judge] should enter a restraining order that provides protection for the victim" from immediate harm or further acts of abuse. Silver, 387 N.J. Super. at 126.

Harassment, N.J.S.A. 2C:33-4, is a predicate act of domestic violence enumerated under the PDVA, N.J.S.A. 2C:25-19(a)(13). Under N.J.S.A. 2C:33-4(c), a person commits an act of harassment "if, with purpose to harass another, he [or she]. . . [e]ngages in any other course of alarming conduct or of repeatedly committed acts with purpose to alarm or seriously annoy such other person." To commit harassment, a defendant must "act with the purpose of harassing the victim." D.M.R., 467 N.J. Super. at 323. "A finding of a purpose to harass may be inferred from the evidence presented and from common sense and experience." Ibid. (quoting H.E.S. v. J.C.S., 175 N.J. 309, 327 (2003)). "Although a purpose to harass can be inferred from a history between the parties, that finding must be supported by some evidence that the actor's conscious object was to alarm or annoy; mere awareness that someone might be alarmed or annoyed is insufficient." J.D. v. M.D.F., 207 N.J. 458, 487 (2011). A judge

must consider "the totality of the circumstances to determine whether the harassment statute has been violated." N.B. v. S.K., 435 N.J. Super. 298, 307 (App. Div. 2014) (quoting Cesare, 154 N.J. at 404).

### III.

We first address defendant's argument that reversal of the FRO is warranted because the judge denied him due process by engaging "in advocacy for . . . plaintiff." "Fundamentally, due process requires an opportunity to be heard at a meaningful time and in a meaningful manner." Doe v. Poritz, 142 N.J. 1, 106 (1995). A trial judge's "obligation is to see to it that justice is accomplished and to conduct and control proceedings in a manner that will best serve that goal." J.D., 207 N.J. at 482. A review of the record here demonstrates the judge afforded the parties all requisite due process during the FRO hearing.

As defendant accurately recognized in his merits brief, "A judge may have to question a [self-represented] party to elicit necessary testimony." We have long recognized judges hearing domestic violence matters are allowed significant leeway, particularly when one or both litigants are unrepresented, so as to focus the testimony and achieve a clear and thorough understanding of both the claim and the defenses. Ibid. Trial judges are permitted to provide "some

relaxation of the formalities accompanying court hearings." D.N. v. K.M., 429 N.J. Super. 592, 608 (App. Div. 2013).

We reject defendant's argument that reversal is mandated because the judge posed questions to plaintiff and focused her testimony. The judge's permitted questions focused plaintiff to the specific allegations in the amended TRO and were well-supported by case precedent, which precludes a victim from testifying to alleged incidents of domestic violence not described in the TRO. As our Supreme Court has elucidated, domestic violence judges "must ensure that [a] defendant is afforded an adequate opportunity to be apprised of . . . allegations and to prepare." J.D., 207 N.J. at 480. "Due process requires that a finding of domestic violence be based upon the act or acts of domestic violence alleged in the complaint." Pazienza v. Camarata, 381 N.J. Super. 173, 184 (App. Div. 2005).

We are also unpersuaded by defendant's argument that the judge at times posed leading questions. N.J.R.E. 611(a) allows judges to "exercise reasonable control over the mode and order of interrogating witnesses and presenting evidence to" ensure a "procedure effective for determining the truth" and "avoid wasting time." Further, our evidence rules do not bar all leading questions on direct examination; particularly permissive questions include those "necessary

12

to develop the witness' testimony." N.J.R.E. 611(c). Our rules of evidence also provide that a trial judge has the right to "examine a witness regardless of who calls the witness." N.J.R.E. 614(b). A judge questioning a witness should not be "perceived as an advocate for any side of a dispute." D.M.R., 467 N.J. Super. at 321 (quoting L.M.F. v. J.A.F., 421 N.J. Super. 523, 537 (App. Div. 2011)). When such advocacy occurs, "there may be substantial prejudice to the rights of one of the litigants." Ibid. (quoting Village of Ridgewood v. Sreel Inv. Corp., 28 N.J. 121, 132 (1958)). The record reflects the judge's questions appropriately focused plaintiff's testimony to the predicate acts alleged in the TRO.

The trial transcript reflects defense counsel repeatedly interjected commentary and made numerous objections. We note the judge addressed defense counsel's objections. She at times sustained his objections regarding plaintiff's hearsay statements and noted his continued objections for the record. Plaintiff apologized multiple times throughout the trial, explaining her lack of familiarity with the procedures. She stated, "I am sorry [judge]. I just am not used to any of this type of procedure[]." The judge had to request defense counsel to permit plaintiff to finish her statements, asking defense counsel to "wait, . . . let her speak, please" and to "[l]et her finish her sentence for one moment, please." We note during defense counsel's cross-examination of

plaintiff, he advised the judge he was "cognizant of the time" being late in the day, but he requested "to finish" cross-examination, which the judge granted stating, "Take as long as you" need. The record reflects the judge ensured the parties were provided a fair opportunity to be heard, and only relied on admissible evidence.

Further, we conclude the judge was permitted to admit the three photos into evidence. "We defer to a trial court's evidentiary ruling absent an abuse of discretion." State v. Garcia, 245 N.J. 412, 430 (2021). Plaintiff had established the photos were a true and accurate depiction of her observations. After defense counsel had concluded his summation, and the judge realized she erred by not formally acknowledging the admission of the evidence at the end of plaintiff's case, the judge provided defense counsel a further opportunity to be heard prior to her decision, which counsel declined. We discern no error in the admission of the photos, as defense counsel had ample opportunity during the trial to clarify with the judge the admission of evidence, to cross-examine plaintiff on the photos, and to supplement his summation. We are also satisfied the judge did not err by precluding defense's cross-examination of plaintiff regarding her Xanax prescription and other issues, which were not relevant to plaintiff's domestic violence claims. The judge appropriately addressed the objections,

14

provided the parties an opportunity to be heard, and focused the trial on the domestic violence allegations in the TRO.

In sum, a review of the record demonstrates no evidence the judge was biased, considered facts outside of the record, improperly influenced plaintiff's testimony, or ignored facts weighing in defendant's favor. We discern no deprivation of defendant's due process rights. The judge's finding that defendant committed the predicate acts of harassment and that an FRO was necessary to protect plaintiff from further acts of domestic violence are amply supported. Therefore, we discern no error in the entry of the FRO against defendant.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-1699-23