# RECORD IMPOUNDED

**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-1156-24

K.B.,[1]

    Plaintiff-Respondent,

v.

A.B.,

    Defendant-Appellant.

_____

Submitted October 15, 2025 – Decided November 20, 2025

Before Judges Susswein and Augostini.

On appeal from the Superior Court of New Jersey, Chancery Division, Family Part, Hudson County, Docket No. FV-09-1203-24.

Hegge & Confusione, LLC, attorneys for appellant (Michael Confusione, of counsel and on the briefs).

Porro Law Group, LLC, attorneys for respondent (Kristen Porro Reilly, of counsel and on the brief).

---

[1] We use initials to protect the confidentiality of the record and the privacy interests of the parties. See R. 1:38-3(d)(10).

PER CURIAM

After six days of trial, the Family Part judge entered a final restraining order (FRO) in favor of plaintiff K.B. and against her husband, defendant A.B., pursuant to the Prevention of Domestic Violence Act (PDVA), N.J.S.A. 2C:25-17 to -35. The judge found defendant committed two predicate acts of domestic violence: harassment, N.J.S.A. 2C:33-4, and contempt of a domestic violence restraining order, N.J.S.A. 2C: 29-9, and the issuance of an FRO was necessary for plaintiff's protection.

Defendant appeals from the December 17, 2023 FRO, contending the judge erred in finding harassment and the second prong of Silver v. Silver, 387 N.J. Super. 112, 126-127 (App. Div. 2006). We affirm because the judge's factual findings are supported by substantial credible evidence and she correctly applied the law.

I.

We discern the facts from the FRO hearing. The parties are married and have four children. Although they were living together at the time of the incident relevant to this appeal, they were in the process of divorcing. On August 23, 2023, plaintiff confronted defendant over his alleged extramarital affair. Defendant became angry, threatening to cut plaintiff off financially, to

2

take their children to India, and to cause her bodily harm. Plaintiff testified that, in response to being questioned about the affair, defendant screamed at her, called her an animal and claimed "he [was] entitled to do what he wishe[d] to do, [and she was] to manage the household and not bother him about anything that he does." Plaintiff explained that defendant's yelling and verbal abuse as well as his threats, intimidation and controlling behavior were common throughout their marriage.

After the August 23, 2023 confrontation, defendant did not speak to plaintiff for months. Plaintiff explained that she did not seek a temporary restraining order (TRO) immediately after this incident because the parties' daughter was suffering from ovarian cancer.

Days before she requested a TRO, defendant sent plaintiff a text threatening to cut her off from using the Costco credit card for the family's needs and requiring plaintiff to pay for her friend who was residing in the house to assist with childcare so plaintiff could work. Plaintiff testified that during the marriage defendant disapproved of her working. She explained defendant refused to speak with her after she got a job, would "not agree to pay for any childcare" and would do "everything to make it difficult for [plaintiff] to work." Plaintiff testified that defendant tried to control the type of work plaintiff could

3

do, rather than permitting her to decide. For example, defendant took plaintiff's resume and circulated it to multiple recruiters to find what he felt was a better suited job for plaintiff.

However, in 2023, while trying to gain employment, plaintiff failed an employment background check. She learned that defendant had started a business using her social security number without her knowledge or consent. On September 20, 2023, when plaintiff confronted defendant with this information, he responded by texting plaintiff, "[c]ontrol yourself. Do not cut the branch on which you are sitting on."

On October 30, 2023, plaintiff's friend, D.D., was in the parties' home, caring for their young son. Defendant confronted D.D., shouting at her to get out of the house. When D.D. refused, defendant came "really close" to her and attempted to "snatch" her laptop. D.D. feared defendant "was going to hit" her. Feeling unsafe, D.D. called 911, and ultimately left the home. It was after this incident that plaintiff sought and obtained a TRO that same day.

The TRO was amended numerous times to include prior instances of domestic violence, new allegations that defendant violated the TRO, and to modify parenting time. Regarding violations of the TRO, plaintiff alleged

A-1156-24

defendant repeatedly violated the order both directly by contacting plaintiff and indirectly by requesting others to contact plaintiff and urge her to drop the TRO.

At the FRO hearing, which was conducted over several days during the span of approximately seven months, plaintiff and defendant testified and called several witnesses, who testified regarding the parties' relationship. Plaintiff's witnesses recited defendant's efforts to convince her to reconcile and withdraw the TRO, even after the court specifically prohibited any such contact. In addition to testimonial evidence, both parties submitted documentary evidence.

Defendant denied committing the predicate act of harassment but acknowledged violating the TRO. He contended, however, that there was no need for the issuance of an FRO because plaintiff was not in danger and there was no likelihood of further abuse.

On December 17, 2024, after considering the evidence and assessing the witnesses' credibility, the Family Part judge issued her oral decision finding that

A-1156-24

defendant committed the predicate acts of harassment and contempt of the DV order and that an FRO was necessary for plaintiff's and children's protection.

On appeal, defendant reiterates the arguments made before the Family Part judge and contends the judge erred by finding defendant committed the predicate act of harassment and concluding plaintiff has established the need for an FRO.

II.

When reviewing "a trial court's order entered following [a] trial in a domestic violence matter, we grant substantial deference to the trial court's findings of fact and legal conclusions based upon those findings." J.D. v. A.M.W., 475 N.J. Super. 306, 312-13 (App. Div. 2023) (quoting N.T.B. v. D.D.B., 442 N.J. super. 205, 215 (App. Div. 2015)). We do "not disturb the factual findings and legal conclusions of the trial judge unless [we are] convinced that they are so manifestly unsupported by or inconsistent with the competent, relevant and reasonably credible evidence as to offend the interests of justice." C.C. v. J.A.H., 463 N.J. Super. 419, 428 (App. Div. 2020) (alteration in original) (quoting S.D. v. M.J.R., 415 N.J. Super. 417, 429, (App. Div. 2010)) (internal quotation marks omitted).

Deference is particularly appropriate when, as here, the evidence is largely testimonial and involves credibility issues, because the judge who observed the

witnesses and heard the testimony has a perspective the reviewing court does not enjoy. See Pascale v. Pascale, 113 N.J. 20, 33 (1988) (quoting Gallo v. Gallo, 66 N.J. Super. 1, 5 (App. Div. 1961)); see also D.M.R. v. M.K.G., 467 N.J. Super. 308, 323 (App. Div. 2021) ("Since this case turned almost exclusively on the testimony of the witnesses, we defer to the Family Part judge's credibility findings, as he had the opportunity to listen to the witnesses and observe their demeanor."). We nonetheless review de novo a trial judge's legal conclusions. C.C., 463 N.J. Super. at 429.

A judge presiding over a domestic violence trial must make certain findings pursuant to a two-step analysis set forth in Silver. 387 N.J. Super. at 125-27. Initially, "the judge must determine whether the plaintiff has proven, by a preponderance of the credible evidence, that one or more of the predicate acts set forth in N.J.S.A. 2C: 25-19(a) has occurred." Id. at 125 (citing N.J.S.A. 2C:25-29(a)). In evaluating the conduct of defendant, the judge must consider "any past history of abuse by a defendant as part of the plaintiff's individual circumstances and, in turn, factor that history into [his or her] reasonable person determination." A.M.W., 475 N.J. Super. at 314 (quoting Cesare v. Cesare, 154 N.J. 394, 403 (1998)). If the judge concludes defendant committed an act of domestic violence, the second inquiry "is whether the [judge] should enter a

7

restraining order that provides protection for the victim" from immediate harm or further acts of abuse. Silver, 387 N.J. super. at 126.

A.

We address first the judge's finding regarding the predicate act of harassment under N.J.S.A. 2C:33-4. Harassment, one of the delineated offenses under the PDVA, occurs when:

> [I]f, with purpose to harass another, [a person]:
>
> a. Makes, or causes to be made, one or more communications anonymously or at extremely inconvenient hours, or in offensively coarse language, or any other manner likely to cause annoyance or alarm;
>
> b. Subjects another to striking, kicking, shoving, or other offensive touching, or threatens to do so; or
>
> c. Engages in any other course of alarming conduct or of repeatedly committed acts with purpose to alarm or seriously annoy such other person.
>
> [N.J.S.A. 2C:33-4].

To commit harassment, a defendant must "act with the purpose of harassing the victim." D.M.R., 467 N.J. Super. at 323. "A finding of a purpose to harass may be inferred from the evidence presented and from common sense and experience." Ibid. (quoting H.E.S. v. J.C.S., 175 N.J. 309, 327 (2003)). "Although a purpose to harass can be inferred from a history between the parties,

8

that finding must be supported by some evidence that the actor's conscious object was to alarm or annoy; mere awareness that someone might be alarmed or annoyed is insufficient." J.D. v. M.D.F., 207 N.J. 458, 487 (2011). A judge must consider "the totality of the circumstances to determine whether the harassment statute has been violated." N.B. v. S.K., 435 N.J. Super. 298, 307 (App. Div. 2014) (quoting Cesare, 154 N.J. at 404).

Defendant contends that the judge erred in finding the predicate act of harassment because the evidence did not support this offense, and the judge's credibility findings were unsupported by the record. We reject these arguments for several reasons. First, the judge's credibility findings—adopting plaintiff's description of the events over defendant's—are entitled to deference. In assessing the parties' credibility, the judge considered that the parties were in the midst of a divorce and the potential impact the matrimonial litigation may have had on their testimony.

Furthermore, the judge detailed her credibility findings as to the parties and each witness and grounded those determinations in the evidence. For example, the judge pointed out contradictions during defendant's testimony and in contrast, noted in several instances, the documentary and testimonial evidence corroborated many of plaintiff's assertions. The judge also properly evaluated

A-1156-24

defendant's August 23, 2023 conduct—screaming in plaintiff's face, threatening to cut her off financially, threatening to take the children to India, and statements of bodily harm—in the context of the prior incidents of domestic violence and the totality of the parties' relationship. The judge concluded that defendant's purposeful actions constituted harassment.

Defendant further contends the judge failed to sufficiently set forth which of the statutory provisions defendant violated and did not set forth sufficient findings as to each element of the harassment statute. We disagree. The judge specifically referred to subsection (c) of N.J.S.A. 2C:33-4 in her findings, noting that the repeated threats made by defendant in August and October, culminating in the incident involving plaintiff's friend, D.D., on October 30, 2023, were done with the specific intent to cause worry and to trouble plaintiff. As the judge explained, these "repeated acts" in the form of communications were intended to "cause [] plaintiff alarm or to seriously annoy" her, thereby satisfying subsection (c) of N.J.S.A. 2C:33-4.

Other than attempting to downplay his statements, defendant provided no credible or benign explanation for his repeated, threatening, and demeaning statements to plaintiff, some of which were corroborated by plaintiff's witnesses.

A-1156-24

The judge also cited defendant's statements to take the children away from plaintiff to India as another example of a statement made solely to weary or alarm plaintiff. Furthermore, the judge properly rejected defendant's excuse that his statements to the children to go on a hunger strike and that he would cut his veins, were statements made in jest; rather, the court found these statements were designed to upset the children and cause them to pressure their mother to drop the TRO. As the judge noted, defendant did not deny making such statements; instead, he attempted to deflect his true intent, which was to harass plaintiff. Therefore, we are satisfied that substantial, credible evidence in the record supports the judge's conclusion that such statements were made with the intent to harass.

A review of the record demonstrates no support for defendant's remaining argument that the judge exhibited bias during the hearing. Defendant was provided with ample opportunity to present his case and to provide legal support for the arguments asserted. To the extent we have not addressed any of defendant's remaining arguments concerning the predicate act of harassment, those arguments are without merit to warrant discussion in a written opinion. R. 2:11-3(e)(1)(E).

11

B.

Even had the judge erred in finding the predicate act of harassment, defendant admits, and does not challenge on appeal, the Family Part judge's finding of contempt of a DV order, N.J.S.A. 2C:29-9(b)(1). It is undisputed that defendant had been served with the TRO, and after having been served, that defendant repeatedly violated the TRO by contacting plaintiff directly and indirectly with the intent to pressure her into dismissing the complaint. Recognizing the sufficiency of the court's finding of the predicate act of contempt, defendant alternatively argues that the court erred by finding an FRO necessary to prevent further abuse as required by the second prong of Silver.

The second prong of the two-part Silver analysis "reflects the reality that domestic violence is ordinarily more than an isolated aberrant act and incorporates the legislative intent to provide a vehicle to protect victims whose safety is threatened. This is the backdrop on which defendant's acts must be evaluated." R.G., 449 N.J. Super. at 229 (citing Corrente v. Corrente, 281 N.J. Super. 243, 248 (App.Div. 1995)). "[T]he trial court must find [not only] a predicate offense [but] also find a basis, upon the history of the parties' relationship, to conclude the safety of the victim is threatened and a restraining

12

order is necessary to prevent further danger to person or property." R.G., 449 N.J. super. 208, 224 (App. Div. 2017).

In her oral decision, the judge carefully considered the relevant factors under N.J.S.A. 2C:25-29(a), finding a history of domestic violence between the parties, defendant's control over the parties' finances, the best interests of the victim and children, defendant's coercive control over plaintiff, and defendant's repeated violations of the TRO all weighed in favor of the issuance of an FRO. The judge addressed each of these factors with respect to the competent evidence adduced at the hearing. For instance, the court detailed a significant history of domestic violence, which included defendant humiliating and demeaning plaintiff in the presence of friends at a holiday gathering, and belittling her at her birthday celebration, all done in an aggressive manner as demonstrated by defendant's very behavior during the hearing. The judge observed defendant being "combative," shouting, and at times, "[taking] an aggressive stance." Furthermore, the judge stated that defendant refused to follow instructions from the court or his attorney and "showed no respect for the court or court rules."

The court found plaintiff's control of the family's finances, type of work he would permit plaintiff to do and refusal to pay for childcare amounted to coercive control during their marriage. See Cesare, 154 N.J. at 397-98

13

(domestic violence has been described as a "pattern of abusive and controlling behavior injurious to it victims") (quoting Peranio v. Peranio, 280 N.J. super. 47, 52 (App. Div. 1995)).  These instances coupled with defendant's persistent violations of the TRO clearly supported the need for an FRO to protect plaintiff from ongoing abuse.  Silver, 387 N.J. Super. at 126-27.

The court also concluded that the issuance of an FRO was in the children's best interests because of defendant's efforts to involve the children in the litigation and to convince them to go on a hunger strike to pressure plaintiff into dismissing the TRO.  These efforts gravely frightened the children.  Defendant's use of the children to coerce plaintiff was clearly supported by competent evidence, demonstrating the need for an FRO.   Thus, as the judge found, the record clearly demonstrated that plaintiff marshalled sufficient evidence to establish the second prong of Silver.

## C.

Lastly, we address defendant's contention that plaintiff's delay in seeking a TRO after the August 2023 incident and continued cohabitation with defendant demonstrated plaintiff is not fearful of defendant and does not need an order of protection.  We are unpersuaded by this argument.

14

The court credited plaintiff's explanation, finding that after the August 2023 incident, plaintiff "had her hands full with her daughter, who was fighting ovarian cancer," and thus did not seek a TRO immediately. In the context of the parties' relationship and defendant's behaviors toward the children, the record does not support defendant's contention that the delay was motivated by a lack of fear. Moreover, our case law has repeatedly held a victim's delay, or refusal to seek help, is more symptomatic of the dynamics of an abusive relationship. See e.g. Wildoner v. Borough of Ramsey, 162 N.J. 375, 392-93 (2000) ("It is well documented that, for a number of reasons, victims of domestic violence often do not report their abuse to law enforcement officers."); Tribuzio v. Roder, 356 N.J. Super. 590, 597 (App. Div. 2003) ("Indeed, it is somewhat typical in domestic abuse situations that a victim will try to avoid signing a complaint under the Act, hoping the perpetrator will just leave her alone, and then, after a cumulation of incidents, the victim takes the necessary legal action.")

In sum, based on our review of the record, we are convinced there is sufficient credible evidence to support the judge's determinations on both Silver prongs. 387 N.J. Super. at 126-27. Thus, we discern no legal or factual basis to depart from the judge's decision to grant an FRO.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

M.C. Hanley

Clerk of the Appellate Division          A-1156-24

15